Paris *v.* Vail et al.

CALEB PARIS *v.* GEORGE O. VAIL, AARON R. VAIL AND, AMASA BANCROFT.

Where a landlord leased to his tenant, with the farm, stock and farming uten-sils to the amount of $1000, and the lease contained a provision, that the tenant should keep on the farm, during the term, stock and farming utensils to the amount of $1000, in the same proportion, as nearly as possible, that the different kinds of each were placed on the premises at the time the term commenced, and that all the stock and farming tools, placed on the premis-es at the commencement of the term, and all other stock and farming tools, which might from time to time, during the term, be added to or substituted for the same, should remain the sole property of the lessor, as a security for the payment of the rent and the performance of the covenants on the part of the lessee, it was held, that the contract was valid, and extended to the property placed on the farm, or purchased by the lessee with the avails of that property, or of the products of the farm, to the amount of $1000.

And, it appearing that the lessee had, with the consent of the lessor, sold a portion of the personal property leased, and that he had purchased other property instead of that, and in addition to it, and it not appearing, that the property purchased was obtained by the lessee out of his own means, or that the intention of the parties was to conceal the property of the lessee from his creditors, it was held that the court would treat the property so pur-chased, to the amount of $1000, in the whole, as purchased with the avails of the farm, or of the property leased with the farm, and its increase and avails; and that it made no difference, that the lessee, in selling the prop-erty, omitted to disclose to the purchasers that the lessor was the owner of the property.

And it was also held, that the property thus on the farm, to the amount of $1000 in the whole, could not be attached at the suit of the creditors of the lessee; but that the right of the lessor extended only to that amount, and could not extend, under the terms of the lease, to the excess of property over the value of $1000, nor to property acquired by the lessee from the avails of his individual means.

And the creditors of the lessee having attached and sold the stock and farm-ing utensils upon the farm, a part of which consisted of property placed up-on the farm by the lessor at the commencement of the term, and the re-mainder of which was property purchased by the lessee, in place of stock &c. sold by him with the consent of the lessor, it was held, in the absence of all proof of fraud, that the lessor was entitled to recover against the at-taching creditors, to the amount of $1000 and interest from the time of the taking, in an action of trespass on the case.

And the lease containing a clause, providing that the lessee might have the privilege of paying for the stock and farming utensils, placed upon the farm under the lease, or any part thereof, in good, substantial stone wall, to be made from time to time, by the lessee, and left upon the farm, when the same should be surrendered to the lessor, or in erecting buildings, or in extra repairs of buildings thereon, made, during the term, by the lessee with the consent of the lessor, at a fair cash price at the end of the term, it was held, that such expenditures were not to operate as part payment for the personal property, until the expiration, or surrender of the lease, and that, in an action on the case, brought by the lessor against the attaching creditors of the lessee, for taking such personal property, it was not competent for the defendants to prove, that the lessee had made a large quantity of stone wall upon the farm, and had erected buildings, pursuant to the lease and under the direction of the lessor.

Trespass on the Case for injury to the reversionary interest of the plaintiff in certain personal property, with a count in trover for the same property. Plea, the general issue, and trial by jury,— Williams, Ch. J. presiding.

On trial the plaintiff gave in evidence an indenture, executed by himself and Ephraim Chase, bearing date March 1, 1837, by which he leased to Chase certain premises, and also certain stock and farming utensils, valued at $1000, for the term of ten years; and the lease, among other provisions, contained a stipulation, that the lessee should keep on the premises, so long as he should continue in possession thereof, " to the amount in value of at least the said sum of $1000 worth in stock and farming tools and utensils, agreeably, as near as conveniently might be, unless otherwise consented, or agreed to, to the rates and description of the same " on the premises at the commencement of the term. The lease also contained a stipulation in these words,—" And farthermore, it is covenanted, agreed and understood, by and between the said parties, that the said stock and farming tools, which are now on the said premises, and all and any other stock and farming tools, which may from time to time hereafter be added to or substituted for the same, shall be and remain as the sole property of the said Caleb, his heirs, executors, administrators and assigns, and as a lien and security in his and their hands for the payment of the said rents and the performance of all the covenants, conditions and stipulations, as herein before expressed to be done, performed and kept on the part and behalf of

Paris *v*. Vail et al.

the said Ephraim, his heirs, executors and administrators, and that he, or they, are not, at any time, to sell, dispose of, or convey away the same, or any part thereof, without the license, or consent, of the said Caleb, his heirs, executors, administrators, or assigns." And there was also in the lease a provision, that the lessee, should " have the privilege and benefit of paying for the said stock and farming tools and utensils, so delivered to him and placed upon the said farm by the said Caleb, to the said amount of $1000, or any part thereof, in good, substantial stone wall fence, made and built from time to time on the said farm, and left thereon, when the same shall be surrendered or delivered back by him," " or in buildings erected, or extra repairs of buildings thereon made during the said time, by the direction, or consent, of the said Caleb," " at a fair cash price, or value, for the same, at the end of the said term ; and if to the full amount of the said sum of $1000, or in the ratio, or proportion, thereto, the said stock and farming tools and utensils to become the property of the said Ephraim," " and the surplus, or remainder, thereof, in value and amount, if any, to be returned, or re-delivered, to the said Caleb."

The plaintiff also proved, that the defendants, about the sixth of February, 1842, took and drove away from the premises described in the indenture, certain stock and personal property, a portion, at least, of which was the property leased by the plaintiff to Chase.

The defendants then gave in evidence an execution in favor of the defendants, George O. Vail and Andrew R. Vail against Chase, which the defendant Bancroft was duly authorized to levy and return, and Bancroft's return thereon, showing that he took and sold the property, described in the plaintiff's declaration, by virtue of said execution. The defendants also offered to prove, that Chase, after entering upon the demised premises, and before the property was taken by the defendants upon the execution, had erected a large quantity of stone wall, as well as buildings, on the premises, pursuant to the stipulations of the lease, and under the direction of the plaintiff. This evidence was objected to by the plaintiff and excluded by the court.

The defendants then gave evidence, tending to prove that Chase, with the consent of the plaintiff, had sold a part of the personal property received by him from the plaintiff, and had purchased other

property instead of the stock &c. on the farm, and in addition to it, without disclosing to those of whom he purchased, that he did not purchase the same on his own account, and that he had purchased, in this way, a considerable part of the property, on which the execution was levied, and had put the same upon the premises.

The defendants requested the court to instruct the jury, that the plaintiff could not recover for the property so purchased by Chase, and also, that the plaintiff could only recover for his reversionary interest in any of the property.   But the court charged the jury, that the plaintiff was entitled to recover the full value of whatever property Chase put upon the premises, in substitution for, or in addition to, the property, so leased to him by the plaintiff, if there was no fraudulent intent, on the part of the plaintiff, to deceive the creditors of Chase, by thus assenting to the sale and purchase made by Chase.

The jury returned a verdict for the plaintiff, for the value of all the property taken by the defendants.   Exceptions by defendants.

*S. H. & E. F. Hodges,* for defendants.

1.   Under the ruling of the court we may assume that Chase had paid, in making wall and other permanent repairs upon the premises, for the whole stock put upon the place, and thus, by virtue of the covenants in the lease, secured to himself a perfect title.   The property thus purchased would be subject to attachment at the suit of Chase's creditors, and therefore it was competent for the defendants to show, that it had become vested in Chase.

2.   It is evident, from the instructions given to the jury, that the court construed the lease as conveying to the plaintiff an absolute title to all the property purchased by Chase, as well as the plaintiff. But the defendants insist, that the lease preserves to Paris only a lien upon the property, as a security for the performance of Chase's covenants, and does not convey to him an absolute title.   This is shown by the very words of the lease, and by the privilege secured to Chase in a subsequent covenant.   If the plaintiff has only a special property in these chattels, it is as security for his debt against Chase.   It should, therefore, have been left to the jury to find the amount of this debt, which would have fixed the value of his interest in the property sued for.   8 Wend. 445.

3. The defendants also insist, that the design of the parties was, and the legal meaning of the indenture is, to give the plaintiff a lien upon all the property the plaintiff should substitute for or add to that mentioned in the lease, or which should, in the course of nature, spring from it; and that no intention is manifested in the papers, nor can any be implied from the circumstances of the parties, to charge the property Chase should purchase with a lien for the benefit of the plaintiff. The language refers only to property put on by the plaintiff, and is not of sufficient force and precision to give title to an infinite amount of property, without specifying terms, or consideration. The subsequent covenant, securing to Chase the privilege of purchasing the property by building wall, is consistent only with this interpretation. The facts disclosed in this case present an apt illustration of the practical evil involved in the plaintiff's claim, and the wrong inflicted upon the defendants in consequence.

*G. W. Harmon* and *Ormsbee & Edgerton* for plaintiff.

1. The testimony offered by the defendants was properly rejected. The wall and buildings, to be made and erected by Chase, were to be left on the premises and the value ascertained at the end of the term. Until a full performance of all the conditions precedent Chase acquired no title to the property, but the ownership remained in the plaintiff. *Barrett* v. *Prichard,* 2 Pick. 512. *West* v. *Bolton,* 4 Vt. 558. *Grant* v. *King,* 14 Vt. 367. *Bradley* v. *Arnold,* 16 Vt. 382. *Leighton* v. *Stevens,* 22 Maine 252. *Case* v. *Hart,* 11 Ohio 364, [Kinne's Comp., 1845, 154.]

2. We contend, that the plaintiff was entitled to recover for the property purchased by Chase, and put upon the premises in substitution for or in addition to the property received by him from the plaintiff. The case shows, that the sale by Chase was with the consent of the plaintiff; Chase, then, was constituted the agent of the plaintiff; Story on Cont. §§ 277, 281, 289; 2 Kent 613; *Allen et al.* v. *Rand,* 5 Conn. 322. It was not necessary, that Chase should disclose to those, with whom he traded, that he acted in behalf of Paris; *Collins* v. *Butt,* 10 Wend 399. The plaintiff became invested with the title to the property, the moment it was purchased by Chase, as his agent; *Bigelow* v. *Huntley,* 8 Vt. 151; *Collins* v. *Forbes,* 3 T. R. 316. The stipulations for continuing the title to

36

Paris to the property were not against sound policy, and, having been made and conducted in good faith, should be sustained; 6 Law Rep. 42, Bailment, § 3; *Mitchell* v. *Winslow*, 6 Law Rep. 347.

3. We insist, that the plaintiff was entitled to recover the full value of all the property, to which he had shown title. The transaction between the plaintiff and Chase amounted to a bailment, and not a sale; *Bigelow* v. *Huntley*, 8 Vt. 151; *Strong* v. *Taylor*, 2 Hill 326; *Pierce* v. *Schenck*, 3 Hill 28; *Grant* v. *King*, 14 Vt. 367. The attachment and removal of the property was a *tortious* act in the defendants, was a *misuser* of the property bailed, and determined the bailment; and hence the plaintiff, may recover, in trover, the full value of the property; *Bigelow* v. *Huntley*, 8 Vt. 151; *Swift* v. *Mosely*, 10 Vt. 208; Story on Cont. §§ 438, 441; *Pierce* v. *Schenck*, 3 Hill 28; 6 Law Rep. 42, Bailment §§ 3, 4; *Grant* v. *King*, 14 Vt. 367; *Rightmyer* v. *Raymond*, 12 Wend. 51; *Leighton* v. *Stevens*, 22 Maine 252.

The opinion of the court was delivered by

REDFIELD, J.   As to the thousand dollars of stock originally put upon the premises by the lessor, and which the lessee covenanted to keep at all times during the term, so that the value should never fall below that sum, we do not find any serious difficulty in upholding the contract, according to the obvious intention of the parties. It is true, indeed, that, as a mere lien, such a contract might be objectionable; for in strictness a lien exists no longer, than the thing itself is retained. But conditional sales have been upheld in this State, by repeated decisions, ever since that in *West* v. *Bolton*, 4 Vt. 558. We are aware, that such sales have, in many of the States, been treated as absolute, after the delivery of the thing to the vendee, on the alleged ground of the great impolicy of thus virtually enabling the vendor to secure to himself a virtual preference among the creditors. But the upholding such sales has not, in this State, given occasion to any complaint, so far as is known; and it is certainly just and equitable, that the vendor of the thing should have the first claim for the price. This is in accordance with the equity decisions, in regard to the right of partnership creditors to preference over individual creditors, so far as the partnership effects are con-

cerned. It is, too, in strict analogy to another familiar rule of decision, both in law and chancery,—that giving to the vendor of real estate a lien for the purchase money. To my mind such a course of decision is not only not impolitic, but highly politic, as well as just. It has long been obvious to my mind, that those rules of law, which give to the honest creditor the most reliable security for his claim upon the irresponsible debtor, are precisely those, which, in practice, are most for the ease of the honest poor citizen. And while every one must appreciate the sentiment, which prompts to liberal legislation towards the poor and dependent, it cannot fail to strike the mind of every wise observer of the course of legislation upon that subject, that too great relaxation of the law of debtor and creditor (which at one time, within the present century, might have been too stringent) cannot but have the effect to defeat its philanthropic object. Entertaining these views, we should not feel justified in declaring a conditional sale, of this kind, void.

2. But it is said, that, in this particular contract, the provision, that the lessee might change the property in the course of the term and that still the lessor should hold his claim good upon the substituted property, and also upon the increase of such stock, ought to induce the court to declare this species of conditional sales void, on account of the very great danger of thus enabling debtors to lock up their property from their creditors. But to the extent of the thousand dollars, put upon the farm, we do not perceive any more serious objection to upholding these latter provisions, than in every case, where one intrusts property to a factor. These circumstances might have some tendency to show the transaction merely colorable; but in that view the defendants have had the full benefit of them with the jury; and the fact, that, when the tenant made exchanges of stock, he did not always disclose the plaintiff as the owner, is no more important in this case, than in every case, where an agent, or servant, purchases property with the funds of his principal, without disclosing the fact of his agency. It has never been supposed, that that fact, of itself alone, would always vest an absolute property in the agent, or servant. In a contract like the present, where cows are leased for the term of ten years, with a clause of conditional sale, it is obvious, that the thing itself must be exchanged in the course of the term. To give to the lessor any benefit from the con-

dition annexed to his sale, it was necessary, that the same condition should extend to the substituted property. It was very natural to expect, that these exchanges would be made by the tenant, and in many instances without disclosing the name of the landlord. It is, perhaps, more natural, that it should sometimes be so, than always otherwise. See *Abbott* v. *Goodwin*, 20 Maine 408.

3. But there is one provision in this particular contract, which induces the court to think, that the plaintiff's claim must be limited to the sum of one thousand dollars. The tenant stipulates to keep the thousand dollars upon the farm. This covenant on his part necessarily implies, that he might sell any excess above that sum. If, then, the tenant could at will absolutely dispose of the excess, we think it must be considered as liable to attachment upon his debts, especially as he could not, in any way, be made to give account of the proceeds of any sale he might make of the excess.

4. As to the provision, in the lease, that the lessor's lien should extend, also, to all property, " which should from time to time be added " to this thousand dollars, if that is to be understood as having reference to *additions*, made by the tenant out of his own resources,— and we suppose that must be its import,—we do not see, how such a provision can be upheld. It is nothing less, than an attempt to create a lien upon property not delivered,—which, by mortgage, may be done, as between the parties,—but also to have this good against the creditors of the general owner,—which can never be done in this state, until we wholly abandon our notion of the necessity of delivery, in order to perfect a sale, as against the creditors of the vendor ; and this we do not intend to do. And as the excess of the verdict above one thousand dollars must been given upon this ground, or upon that last referred to, we think that portion of the damages was given in consequence of error in the charge of the court, allowing damages upon either of these grounds to be given by the jury. It might be supposed possible, perhaps, that some portion of the thousand dollars, included in the verdict, might have been for property " added " to that put upon the place, by the lessor. But as nothing of that appears in the case, we think, that, to the extent of one thousand dollars, the property upon the place, whether originally put there by the plaintiff, or acquired by the tenant, as the original stock passed off, should be treated as coming in the

Paris *v.* Vail et al.

place of that put upon the premises by the plaintiff, and that it could not be treated as an independent acquisition of the tenant, unless that were distinctly shown,—which was not attempted in the present case, there being no testimony in the case tending to show any such fact. There is nothing in the case, to show that any of the property in controversy was purchased by the tenant with funds, which did not accrue from the farm and its products, or the stock put upon the farm by the plaintiff, and its increase and avails; but we understand the express contrary to be stated in the case. We think, therefore, that there is no necessity for a new trial, so far as the thousand dollars, and interest from the time of taking, is concerned. We say nothing of the effect of a mortgage upon property not *in esse.*

5. We have not been able to make any thing for the defendants, so far as the testimony offered by them and rejected by the court is concerned. Those erections, which the tenant was, by the terms of the lease, permitted to make in payment, or part payment, for the stock put upon the place, were not so to operate until the expiration of the term; and until that time no property would vest in the lessee, as to the stock, by the terms of the lease; and, until the property vested in the lessee, it could not be attached upon his debts, although he might have paid the entire price. Suppose one contracts and pays for one hundred bushels of corn, but the corn is not measured, but remains in a mass of other corn; could it be attached by the creditors of the vendee? Clearly not. So in the present case, these erections could not operate to defeat the plaintiff's title until the expiration of the term. They are not so to operate then, unless "they were left thereon;" and for aught that could be known at the time of this attachment, these erections might be destroyed, before the end of the term, by the act of the lessee. And, however improbable such a result might be, it being possible, it is enough to say, that it was one of those contingencies, which, by the terms of the contract, it seems the plaintiff did not choose to take,—certainly not as to the stone wall, for the lease contains an express covenant, that that shall be "left thereon" at the expiration of the term, in order to entitle the tenant to any portion of the stock put on the place by the plaintiff. The object of such a stipulation undoubtedly was, to secure the retaining the stock upon the farm until the expiration of the term, so that the accruing rent would still be se-

cure.   This, we think, the parties might do with perfect propriety ; and we should not feel justified in giving the contract such a construction, as to defeat this, their manifest intention.

6.   It does not seem to be very important, whether the plaintiff shall recover upon his count in trover, or trespass on the case, as he seems clearly entitled to the thousand dollars, and the interest from the time of taking.   The judgment is reversed, as to the excess, and affirmed for that sum.*

WILLIAMS, Ch. J.   I concur with the other members of the court in the judgment which they have rendered ; but at the same time I must take the liberty to observe, that in my opinion the whole judgment of the county court should be affirmed.   If there are any reasons, which will warrant a recovery to the amount of one thousand dollars, the same reasons will require, that the rule adopted by the county court should be adhered to.   In no other way can we give effect to the agreement between Paris, the plaintiff, and his tenant, Chase ; and the reason why this agreement should be broken up and the relation of landlord and tenant be disturbed by these defendants is not apparent to me.

The plaintiff was the owner of the farm and of all the stock originally placed thereon.   When Chase took a lease of the same, he became obligated to pay the annual rent, and was to be owner of

---

*NOTE, by REDFIELD, J.   I may be permitted to say, that I fully concur with the foregoing opinion ; which is, I believe, in its results, the unanimous opinion of the court.   It is not necessary to determine, how far this sale of the property by a stranger to the contract of bailment, will entitle the plaintiff to maintain trover, as the $1000 might be recovered on the other count.   I am not prepared to say, that the action of trover will lie in the case ; I should think not, unless it be shown, that Chase connived at the attachment.   But upon the other view I am satisfied the plaintiff should be allowed to recover the thousand dollars, as security for the fulfilment of the contract.   In the late case of *Jones* v. *Richardson*, decided by the supreme court so late as October, 1846, it seems to be considered, that the old law, in regard to the right to mortgage property not yet acquired, is to be adhered to,—that is, that such mortgage is wholly inoperative ; so, also, with the late case of *Tapfield* v. *Hillman et al.*, 46 E. C. L. 243, to some extent.   But neither of these cases at all impugns the doctrine of this case, as here reported, but, on the contrary, strongly confirms it.

the stock and farming tools, provided he paid for them in the manner stipulated; and as a security for the payment of the rent, and also for the payment for the stock, the stipulation in the lease was made, that the said stock and farming tools now on the premises (being those originally leased with the farm) and " all and any other stock and farming tools, which may from time to time, or at any time hereafter, be added to or substituted for the same, shall be and remain as the sole property of the said Caleb, &c., as a lien, or security, in his and their hands for the payment of said rent and the performance " &c. of the covenants on the part of Chase, without any other limitation as to the amount, except as to the amount of stock and farming tools necessary for the place.

By the construction which is now given by the court a limitation is *added* to the lease, by declaring that it shall be security only for a certain amount, which, it will be seen, is wholly destroying the agreement of the parties. The stock and farming tools put on to the premises by the plaintiff amounted to one thousand dollars. This he is permitted to recover back, whether the property to this amount was the original stock and farming tools, placed there by him, or that which has been *added* to or substituted for the same by Chase; but he is not permitted to recover for any thing farther, though Chase expressly agreed, that he should hold the same as security for the rent, which, to a considerable amount, was to fall due in a few days. Now I can see no valid objection to giving effect to this stipulation in the lease, as the parties intended, and which was made and entered into in good faith and without any fraud; for it is to be borne in mind, that the question of fraud was submitted to the jury, and by their finding they have negatived and repudiated the idea of fraud, and have found that there was none, either in making the lease, or in the manner in which it was managed, either by Chase, or by the plaintiff.

It is readily admitted, that under a lease for years the tenant usually becomes the owner, during and at the expiration of the tenancy, of all the hay, manure, dead and live stock on the farm, unless it is stipulated to the contrary between him and the landlord; and if there is such a stipulation, in my opinion the parties are bound by it, and the right of property is regulated by the agreement. This is so laid down in all the treatises on the law of landlord and tenant; and it

is also laid down, that, when there are any stipulations, the only questions, which can arise, are, as to the construction put upon the agreement. Archbold's Landlord & Tenant 357. Thus the manure, which is to be on the farm at the expiration of the lease, becomes the property of the landlord, or of the in-coming tenant, as the parties agree, although it is not *in esse* at the time. In the early case of *Grantham* v. *Hawley*, Hob. 132, [14 Vin. 72,] it was determined, that the owner of the land might bargain with his lessee in relation to the future crops,—the court saying, "that he who has the land may grant all the fruits, which may arise upon it afterwards, and the property shall pass as soon as the fruits are extant."

In accordance with this principle the supreme court of Massachusetts, in the case of *Lewis* v. *Lyman*, 22 Pick. 437, held, where a landlord had demised a farm, and had furnished twelve cows, and by the lease it was stipulated that the winter manure should be put on to the land, that the hay should be fed out on the farm, that half of the calves should be reared and the other half killed for veal, that this did not vest in the tenant a property in the hay and calves, so as to render the same liable to an attachment at the suit of his creditors, but that it required that the hay should be consumed on the farm and that the calves should be there kept; and the sheriff, who had attached them as the property of the tenant, was held liable to the landlord. The subject was fully considered, and the opinion of the court was elaborate and able.

When I tried this case in the county court, I had some difficulty in my own mind in relation to giving any effect to this lease, beyond the cows, or property which originally belonged to the place, arising from the technical rule, that, to make a grant valid in law, the subject of it must have an existence, either actual or potential, at the time of the grant, and that a mere possibility is not assignable, as was considered in the old case of *Wood* v. *Foster*, 1 Leon. R. 42. That difficulty, however, is overcome by the court in this case, by giving effect to the lease to the amount of one thousand dollars, without inquiring whether the property was *in esse* at the date of the lease; and this militates as much with the principle, as to give to the lease the effect which was given to it by the county court. This difficulty did not seem so formidable, when I found that at law, between landlord and tenant, crops to be grown and manure to be

made long after the date of a lease might be granted and sold,—that an assignment of freight to be earned has been upheld in *Leslie* v. *Guthrie*, 1 Bing. 697, [27 E. C. L. 550,]—that the same doctrine was established in equity *In re Ship Warre*, 8 Price 269, (n.)— that in *Langton* v. *Horton*, 1 Hare 549, an assignment of a whale ship and her tackle and appurtenances *and all oil and head matter and other cargo, which might be caught and brought home*, was held valid against an execution creditor of the assignor,—that Judge Story, in the case of *Mitchell* v. *Winslow*, 6 Law Rep. 347, held, that courts of equity support assignments of contingent interests and expectations, and also of things which have no present actual potential existence, but rest in mere possibility only, and arrived at what appeared to me to be a correct conclusion, " that it was a clear result of all the authorities, that, whenever the parties, by their contract, intend to create a positive lien, or charge, either upon real or upon personal property, whether then owned by the assignor, or contractor, or not, or, if personal property, whether it is then *in esse*, or not, it attaches, in equity, as a lien, or charge, upon the particular property, as soon as the assignor, or contractor, acquires a title thereto, against the latter and against all persons asserting a claim thereto under him, either *voluntarily*, or with notice, or in bankruptcy." If the plaintiff had this undoubted right against his lessee, and against the execution creditors of the lessee, the present defendants, I thought it would be altogether superfluous to limit the recovery to the hay and cows originally put upon the farm by the plaintiff, and their increase, and to turn the parties to a court of equity for the stock *added*, when, according to the authorities cited, the remedy of the plaintiff against the defendants was undoubted and his right incontrovertible.

I can see no equity in the claim of the defendants. They were mere intruders, without any right, intruding upon and breaking up the relation of landlord and tenant, taking property to which their debtor had no legal claim, until he performed his covenants, having notice of the lease, the same being upon record ; and of course, if they had examined the lease, they were acquainted with all its terms and stipulations. I can see no justice in their defence ; and, either at law or in equity, they were liable to the plaintiff for all the property they wrongfully took, and for all the damages which the plaintiff has

37

sustained by reason of their disturbing the occupation and possession of the tenant; and in my opinion they were liable as well at law, as in equity, as no fraud was found in the plaintiff, or in his tenant, and no attempt to screen any of the property of Chase. I should affirm the judgment of the county court in awarding damages for all the hay, stock, &c., which the defendants took from the farm ; but, as I have already remarked, my brethren not being willing to hold them accountable to this extent, I concur with them in the judgment they have rendered, as this case has been twice argued. It seems to me to be unnecessary to put the parties to the expense of a farther litigation.