HON. PIERPOINT ISHAM,  } ASSISTANT JUDGES.
HON. MILO L. BENNETT,  }

---

## SOPHIA RIDOUT v. JASON B. BURTON.

*Fraud in law. Purchase by agent without disclosure of agency.*

If property is sold without any change in its possession, and the vendor again sells it, and the avails of the second sale are paid to the first vendee, who delivers them to the vendor and he purchases with them, for the vendee, other property of the same description, the doctrine of fraud in law, will then be inapplicable; and the property last acquired will not, in the absence of fraud in fact, be subject to attachment for the debts of the original vendor, though he may have purchased it in his own name and ostensibly on his own account, and had taken and always retained possession of it.

The person for whom and with whose funds property is purchased becomes at once the own-
er of it, though the purchase is made by an agent in his own name and without disclosing
his agency.

TRESPASS for taking a cow; plea, the general issue; trial by
jury, June Term, 1854,—PIERPOINT, J., presiding.

The plaintiff gave evidence tending to prove that on the 22d of
November, 1840, she became of age, and from that time continued
to live in the family of Amos Ridout, her father, down to the 6th
of January, 1846, at which time the said Amos gave her his note
of $125.00 for her past services, which were worth that sum; and
that in the month of March, 1846, while she was so continuing in
said family, she made known to said Amos her purpose to go away
and labor for herself in Massachusetts, and thereupon the said
Amos told her if she would remain with him another year, he
would give her a certain black cow, which he then owned, and
$30.00 in money, and the said arrangement was consummated by
the execution and delivery to the plaintiff of a bill of sale of said
cow, dated March, 1846; that the said Amos was at that time the
owner of no other cow, and that the plaintiff about that time
endorsed upon said note, " March, 1846, paid by one cow, $20.00 ;"
that the plaintiff remained thereafter in the family and service of
the said Amos, down to and past the time of the attachment, here-
inafter stated, and that the said cow remained in the use and pos-
session of the said Amos until June 16, 1847, and was the only
cow he then had in his possession; when the said Amos, by direc-
tion of the plaintiff, sold said black cow to a drover for $20.00
which was paid to the plaintiff, and that she thereupon, on the same
occasion handed the same money, with $5.00 more to said Amos,
and requested him to buy her another cow, and that said Amos
thereupon went to Sunderland and bought the red cow in question,
of one Bacon, for $20.00; that said cow remained thereafter in
the possession and use of the said Amos, until February 28th,
1848, when said Amos was the owner of two other cows which he
had with this one, in his own use and possession, and that at said
date, the defendant, being a deputy sheriff, attached and drove
away the cow in question, and one of the others, as the property
of said Amos.

The defendant gave evidence tending to prove that in March,

1846, at the time of the pretended transfer of said black cow to the plaintiff, the said Amos owned another cow, and that intermediate that date and the sale of said black cow, he owned at different times several other cows, and that he at all times possessed, used and improved and controlled said black cow and the cow in question as he did his other cows, without accounting in any way to the plaintiff, and without interference on her part; that on the occasion of the sale of the black cow, (June 16th, 1847,) the said Amos and the drover went into the pasture where the cow was, and there agreed upon the price and concluded the bargain for her sale, when the said Amos being called away, the drover went into the house where the plaintiff was and handed the money ($20.00) to her, and that the said Amos came in very soon and informed the plaintiff that he had sold the black cow for $20.00, and was going to take the money and buy another if she was willing, and wanted $5.00 more for that purpose, and that thereupon, she gave him $5.00 more, and that it was intended any cow he might purchase should be for the use of the said Amos and his family; that said Amos took the $25.00 and immediately started for Sunderland, and with said $25.00 and other money, in all $48.00, he purchased of one Bacon, two cows, the one in question for $20.00 and another for $24.00; that said Amos bought the cows in his own name, and ostensibly on his own account, and drove them home the day after the sale of the black cow; that the plaintiff saw said two cows, when brought home, and expressed herself satisfied with them and said she had rather have the smallest cow, but did not then decide, and there was no evidence that anything was afterward said between plaintiff and said Amos about which cow plaintiff should have.

The plaintiff's evidence tended to prove that on that occasion she expressed a preference for the smallest cow, but said if Andrews preferred that one, she would take the other ; and that Andrews had the largest cow; but the defendant's testimony tended to prove that the cow which Andrews had as hereafter mentioned was the smallest cow.

The defendant's testimony further tended to prove that the next morning, the said Amos exchanged one of said cows with one An-

drews in his own name, and on his own account, offering said An-
drews his choice in said two cows, and without informing him of
any claim upon either, and that thereafter, the cow in question and
the cow had of Andrews remained in the use and possession of the
said Amos, and that other cows were owned by him from time to
time down to the date of said attachment, and that such dealings
on the part of said Amos were known to the plaintiff and not object-
ed to.

The defendant also introduced testimony of the declarations of the
plaintiff, subsequent to said attachment, that the cow in question at
the time of the attachment was not hers, but was the property of
said Amos, and other testimony tending to prove that the several
dealings between the plaintiff and the said Amos, in reference to
said black cow and the cow in question were fraudulent in fact'
and were intended to defraud the creditors of said Amos. The tes-
timony on both sides tended to prove that at the time of the attach-
ment the plaintiff claimed to own both of the cows taken by the
defendant.

The defendant insisted and so asked the court to instruct the
jury, that if they should find the facts which the defendant's testi-
mony tended to prove, they might infer a gift or sale of the black
cow and of the cow in question, to the said Amos; and that the
possession of the cow in question by the said Amos, under the cir-
cumstances, which the defendant's testimony tended to prove, ren-
dered said cow subject to be attached as his property.

The court refused so to instruct the jury, but did charge them,
that if they should find that the transactions between the plaintiff
and the said Amos in relation to said cows were designed to defraud
the creditors of said Amos, and so were fraudulent in fact, or if,
as the defendant's testimony tended to prove, the plaintiff never
owned the cow in question, but she was the property of Amos
Ridout, the cow in question was subject to such attachment. But
if upon the sale of the black cow the plaintiff let the said Amos
have the money to buy a cow for her, and he bought the cow in
question for her, the cow never became the property of the said
Amos, nor subject to be attached for his debts; although he might
have purchased this cow and other cows at the same time, osten-
sibly on his own account and in his own name, and continued in the

use and possession of the same with other cows of his own, and with the consent of the plaintiff, as the defendant's testimony tended to prove; and that the question of fraud in law or constructive fraud did not arise in the case, for if the cow in question was ever the property of Amos Ridout, it was subject to the attachment.

To this charge and to the refusal of the court to charge as requested, the defendant excepted.

*D. Roberts*, for the defendant.

*Miner, Burton*, and *Fowler*, for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J. In this case a considerable number of exceptions are taken to the course of the trial in the county court.

I. It is said the case comes within the principle of the case of *Mills* v. *Warner*, 19 Vt. 609. But in that case the property attached was obtained, by exchange, for that sold. And the exchange was made by the vendor continuing in possession and so far as appears in the case, without the concurrence of, or consultation with the vendee. But in the present case the property originally sold had been converted into money, and the money actually received by the vendee. This, it seems to us, must be regarded as ending all question, in regard to the delivery of the property sold. The money then became the plaintiff's, without reference to the delivery of the black cow, and whether the vendor had at the time of the sale, or subsequently another cow, or not. For however that may be, the want of delivery could only affect plaintiff's title as to creditors actually attaching the property. And the omission to deliver the property only affects the sale, as long as the possession continues in the vendor. If subsequently the property is delivered before any attachment intervenes, the title of the vendee is thereby perfected. And as no question seems to have been made in the case, but the cow was sold and the money came into plaintiff's possession, this, we think, made the money hers, unless there was fraud in fact. This was all the delivery there then could be.

This question of fraud in law, as to creditors of the vendor, for

a want of change of possession, goes mainly upon the ground that creditors will be in doubt what to look to for the collection of their debts. And the same difficulty exists, if the vendor exchanges the property for other similar property and without consultation with or agency of the vendee, as in *Mills* v. *Warner.* But in a case like the present, where there is no connection between this property and any other property which the vendor may have had, the creditor is put at once upon his inquiry as to the origin of the title, and is bound to inquire of the debtor, as the one most likely to know, and the only one absolutely required to know the origin of the fund from which the purchase is made, as held in *Paris* v. *Vail,* 18 Vt. 277, where it was expressly decided, that it was not necessary the vendor should be informed. And if this cow had been bought with money furnished by, and for some one out of the family, it would seem no serious question could be made upon this point.

II. The case then is merely one of the purchase of a cow, with the plaintiff's money, and the subsequent use of it by the plaintiff's father, for a time.

One question, made here, is that the testimony tended to show a gift to the father. But it seems to us, that treating it as a *bona fide* transaction, and the jury have so found it, the facts have no natural tendency to show a gift. The plaintiff declined to give her work, why then should she give her wages any more? The suggestion is altogether at variance with the claim of its being a *bona fide* purchase, and in that view the defendant seems to have the full benefit of the testimony. For if the testimony has any tendency to show any property in the red cow, in Amos Ridout, it is upon the ground that the whole transaction, from the beginning was a mere sham. And in this view it must be confessed the transaction looks suspicious. But that point surmounted, and the jury seem to have done this, it does not appear to us, that the length of possession and the use, under the circumstances and the relation of the parties, has any tendency to show a gift.

There is no doubt the defendant is entitled to a charge, upon every point which his testimony tended to establish, and which is material to the case. But where the defendant's testimony does not conflict with the plaintiff's, the charge should be with reference to the whole testimony. As where the defendant's testimony

tended to show the cow for which plaintiff expressed a preference, exchanged with Andrews, and the plaintiff's that it was the other cow, but the plaintiff's testimony also tended to show, that plaintiff at the time said she would take the cow which Andrews did not prefer, and this was uncontradicted, all that could be required would be a charge applicable to all the testimony, wherein there was no conflict, and the alternative only, where the testimony was contradictory. So too, the fact that Amos Ridout exchanged one of the cows with Andrews, without consulting plaintiff, if that view is contended for, goes to show that, if he bought one of them *bona fide* for plaintiff, it must have been the other, and that she acquiesced in that view of the case, which certainly had a tendency to show that " this cow was purchased for the plaintiff," as submitted to the jury. And it has been held by this court, that in purchasing property for another, with their money, it is not necessary the vendor should be informed of the agency. *Paris* v. *Vail*, 18 Vt. 277.

If then this cow was bought for the plaintiff, and with her money, it would seem to make a case in her favor, *prima facie*. And it is obvious, that defendant's second request, that the mere possession of the cow, by Amos Ridout, under the circumstances, would render her liable to attachment on his debts, is not well founded unless it tended to show the cow to be his property. And in this view the defendant seems to have had the full benefit of the evidence, upon the question of the transaction being fraudulent in fact.

And it seems to us, that the question of fraud in law does not arise in the case, as to this cow, inasmuch as the jury are told, that if Amos Ridout ever owned the cow, defendant must recover. For if we suppose that Amos Ridout really bought the cow, exchanged with Andrews, for plaintiff, but she subsequently consented to accept the other, as hers, it might relate back to the original purchase and make it hers from the beginning, and it would not, perhaps strictly amount to an exchange, with Amos Ridout, so as to require a new change of possession, to protect it from the attachment of his creditors, but the court seem to have charged in defendant's favor on this point, that this would render the property liable for his debts.

And if we suppose that Amos Ridout bought the two cows, with-

out making any designation at the time, the plaintiff would still have an interest, in common, in proportion to her money, and if a division were made subsequently, but immediately, as in the present case, it must have been at the time of the exchange with Andrews, it would fairly perhaps relate to the original purchase, and make it hers from the first. But no such view of the case seems to have been presented to the court below, and no request to charge upon this particular view, and from the charge given, the jury must naturally and necessarily, it would seem, have found that Amos Ridout never owned this cow, and that she was originally bought for the plaintiff, with her money.

The charge might be objectionable, as being too general, and thus submitting the law and fact, combined, to the jury, without proper digestion and separation, if the words used by the judge were not taken in connection with other portions of the case. Amos Ridout could only have owned the cow, in one way, as the testimony stood, that is, by having owned the money with which the cow was purchased, for the judge excluded from the jury all effect of the subsequent possession, as tending to give him title. And the money to be his, must be so either because the sale of the black cow was a sham, or else because the plaintiff's money went to buy the other cow. And we are not to conjecture the jury would have given it any other application unless some other was contended for upon one side or the other.

It seems to me, then, that the charge in this case was favorable to the defendant, and more so than the testimony required or justified. It seemed to allow a verdict for the plaintiff, but upon one ground only, that is, that the cow in question was bought " with the plaintiff's money and for her." In any other view, the case, should according to the charge, have been decided for the defendant, inasmuch as the jury seem to have been distinctly told, that if Amos Ridout ever owned this cow, the plaintiff could not recover. Of course if this particular cow was bought with Amos Ridout's money and for him originally, or if bought without any designation of ownership, as defendant's testimony tended to show, he would have owned this cow in the one case, and in the other it would not have been "bought for her," and the verdict should have been for defendant, without reference to any division of cows between plaintiff and her

father, which defendant's testimony tended to show, was not fully made, and so also, without regard to plaintiff's consent to accept of the cow, which Andrews did not choose to take.   So that if we conclude that either of these points were found for defendant by the jury, the verdict must have been in his favor.   These points of fact must have been decided against the defendant upon the basis of the charge, to enable the jury to give a verdict for the plaintiff.   The jury must have found that this cow was the small cow and not the large one, as defendant's testimony tended to show, and that although plaintiff offered to accept the other, if Andrews chose this, that he must have taken the other, and left her the very one originally bought for her and with her money, as this is the only ground upon which the jury were told they could give a verdict for plaintiff.   And the testimony undoubtedly tends in some degree to show this, so that it was fairly left for the jury to decide as matter of fact.   And if there were other grounds, upon which the plaintiff might have been entitled to a verdict, and which were not left to the jury, it is not for defendant to complain, as his chance of a recovery was thereby increased.

And it seems to us, in this view of the case, that if the jury have found what they were expressly told to find, to entitle plaintiff to recover, viz: that this is the very cow bought with the plaintiff's money, and originally bought expressly for her, there is nothing left in the case, but a simple question of fraud in fact, in regard to which no questions are reserved.   And although the testimony may look pretty strong upon that point, it is no ground of reversing the judgment below.   We could not open the case without adopting refinements of criticism, in regard to the bill of exceptions which would scarcely be justified, in reference to any of the pleadings or proceedings in a case, unless it were pleas in abatement.

Judgment affirmed.