## Case No. 12,213.

### SAFFORD et al. v. BURGESS.

[16 N. B. R. 402.] [1]

Circuit Court, D. Vermont. Oct. 2, 1877.

BANKRUPTCY — TITLE OF ASSIGNEE — STATUTE OF FRAUDS.

1. The assignee takes the property of the bankrupt as an attaching creditor would take it, subject to all legal claims upon it.

2. The bankrupt made a contract with S. & Co. to manufacture hides into leather for them, the hides to be purchased with the proceeds of drafts upon S. & Co.; the drafts were discounted at a bank, and the proceeds thereof placed to the credit of the bankrupt in his general account; the hides purchased were paid for by checks upon such account; *Held*, that the hides were purchased for S. & Co. and became their property; that it is not necessary that the agent should pay out the identical bank-notes he receives from his principal.

3. Where some of the hides were purchased with the proceeds of drafts which S. & Co. refused to accept, their title to such hides is not affected by such fact, but they become debtors to the estate or to the bank advancing the money.

4. The title to the leather, when completed, passes under the arrangement for the purchase of the hides.

[Appeal from the district court of the United States for the district of Vermont.

[This was a proceeding by James O. Safford & Co. against John J. Burgess, assignee of R. S. Read.]

Before HUNT, Circuit Justice, and WHEELER, District Judge.

HUNT, Circuit Justice. The findings of fact by Judge Shipman, and his conclusions of law in this case, are so satisfactory in their general character as to require little to be said in relation to them. The agreement under which the hides were tanned was a common one, and vested the title to the property purchased in Safford & Co. The assignee takes the property of the bankrupt, as an attaching creditor would take it, that is, subject to all legal claims upon it. The case is not that of a bona fide purchaser, whose rights are in many cases superior to those of any ordinary creditor.

Two suggestions are made by the appellants, which should be considered.

1. The money obtained from Safford & Co. by Read was not identically paid to the persons from whom he purchased skins. He obtained funds from Safford & Co., from time to time, by his drafts upon them, which

drafts were discounted by a bank and the proceeds placed to the credit of Read. His account at this bank was a general one. All moneys from every source coming to the bank on his account were placed to his credit, and his checks for the purchase of skins not only, but for any other purpose, were charged against him. The appellant then orally argues that, upon this state of facts, the skins were not purchased with the funds of Safford & Co., and that therefore the case is not within the many authorities cited, which hold that "the person for whom and with whose funds property is purchased becomes the owner of it, although the purchase is made by an agent in his own name and without disclosing his principal." Ridout v. Burton, 27 Vt. 383; Hall v. Williams, Id. 405. This argument is not sound. The cases cited show that the title vests in the principal when the agent advances his own funds, provided the purchase is made under and in execution of the authority. It is not necessary that the agent should pay out the identical bank-notes he received from his principal. If Read had received from Safford & Co. five one hundred dollar bills, and on making a purchase had paid in whole or in part other bank-bills which he had in his pocket-book, the question would have been not as to the identity of the currency, but was the act in execution of the authority given. Any considerable business must be done by the means of bank-checks. No man now carries large amounts on his person to pay for purchases made, and the fact that Read's payments were made by or by means of bank-checks, upon a fund made up of all his credits, will not make him any less the disburser of Safford's funds in the purchases actually made on their account. The evidence is conclusive that all the property in question was purchased for and applied in the performance of the contract with Safford & Co.

2. It is insisted also by the appellant that a portion of the skins were purchased by Read with the proceeds of drafts on Safford & Co., which that firm refused to accept. As to these it is claimed that no title vested in Safford & Co. It is far from certain that the statement of facts here made is sustained by the evidence. The sum of four thousand five hundred dollars was paid by Safford & Co., and it is difficult to find the evidence that a larger amount was invested in the purchase of skins under the contract. But if the fact be assumed, does it place the assignee in any better position? If two hundred and twenty-five dollars were thus expended in the purchase, as is insisted, it was an expenditure under and in performance of the contract, and it may well be argued that Safford & Co. are debtors to the estate to that amount. It may well be argued also, either that Safford & Co. are indebted to the bank advancing this money, upon a promise to accept the drafts, to be

[1] [Reprinted by permission.]

implied from the circumstances, or if not, that the bank can claim an equitable lien upon the property thus purchased with their funds. But the assignee does not represent this claim. It is a specific claim to be asserted by the specific party in whom it is vested, and not in one who is a general representative of the bankrupt, or of the bankrupt and his creditors. Whenever the bank with whose funds the property was alleged to have been purchased shall make the claim, it will be proper that all the facts connected with it, and the equities upon both sides, be presented and considered. It cannot be done upon this record or upon the facts before us, and does not aid the title of the assignee to the leather in question.

3. It is argued further that the title to the leather, when completed, does not pass under the arrangement for the purchase of skins. That if one takes timber to a carriage-maker, saying that he wishes it to be built into a carriage, retaining the title in himself, and the carriage-maker adds the iron, the leather, and the paint to the timber, thereby completing a carriage, that this does not give the title to the carriage to the owner of the timber delivered. When that case shall be presented, it will be in time to decide it. The one before us is not identical or similar to it. The substance, the body, and identity of the skins is that of the leather. Its tendency to decay is arrested; it is hardened, and enlarged, but remains the same substance. A better analogy would be that of logs converted into planed lumber, steamed lumber, or lumber impregnated with chemical substances for its preservation. See the Vermont cases, supra; Marsh v. Titus, Thomp. & C. 29. See, also, Silsbury v. McCoon, 3 N. Y. (3 Comst.) 379, and the learned argument of Mr. Nicholas Hill. The rule there established is this: If a chattel wrongfully taken retains its original form and substance, or may be reduced to its original materials, it belongs to the original owner, even as against a bona fide purchaser. When it is converted into a thing of a different species, as wheat into bread, olives into oil, grapes into wine, corn into whiskey, or wool into garments, it may be reclaimed by the owner except as against an innocent purchaser.

The decree must be affirmed.