## Eben Bigelow vs. John B. Huntley.

Addison,
January,
1836.

A delivery of property to another, to be paid for at a given price, and to become his, upon condition that the price be paid, is not fraudulent as against the creditor of the vendee.

And in case it be attached by the creditor of the vendee, before condition performed, the vendor will hold the same against the attaching creditor. The vendor has a right, in such case to determine the bailment, and resume the possession.

And, although a specific time is given for the payment of the price, which has not expired, yet, if the property be attached upon process against the vendee, and the vendor receipt the same to the officer, he becomes entitled to the possession, and may maintain trespass or trover against a subsequent attaching creditor of the vendee, who takes the property from his possession.

In such case, the right of possession being in the vendor, though only as receiptor, the rule, that the plaintiff can not recover when he has not the right of possession, does not apply.

This was an action of trover for a pair of horses. It appeared that on the 10th day of September 1834, one George Gray purchased a pair of horses of the plaintiff, to be paid for in drawing lumber within two years from the purchase, and that if the horses were not paid for at the end of two years, then the said Bigelow was to have a right to the horses. It further appeared that the horses were exchanged in October 1834 for the horses for which this suit was brought. That said trade was made by Gray, but that, before the exchange was completed Gray and Adams, the man with whom the exchange was made, came to the house of Bigelow, when Bigelow consented that the trade might be made if Gray was disposed. Some time in February the horses in question being in the possession of Gray, Bigelow the plaintiff applied to one Farnet Brown, to whom the said Gray was indebted, to attach the horses and told him if he would make the attachment, he, said Bigelow, would pay the cost of said attachment; that said Bigelow then stated that said Gray was about to abscond and he, Bigelow, wished to get possession of the horses, and the said Brown on the information of said Bigelow made the oath requisite by the laws of New York to enable him to procure an attachment against the property of said Gray. The attachment was made and the horses delivered by the officer to the plaintiff.

The defendant offered evidence tending to prove that the said Gray offered to receipt the said horses at Ticonderoga where they were attached; but that the officer, who acted under the direction of Bigelow declined taking the receipt offered by Gray and brought the horses to Ticonderoga and delivered them to Bigelow and took

ADDISON,
January,
1836.

Bigelow
vs.
Huntley.

his receipt therefor, and that afterwards to wit, on the 14th day of March 1835, said horses were taken in the town of Bridport as the property of said Gray by defendant as constable on an execution against said Gray; and plaintiff demanded said horses some time in March 1835, of defendant. The defendant also offered evidence tending to show that said horses were called Grays by Gray with the knowledge of Bigelow and without any dissent from Bigelow.

The court charged the jury that such contract of sale was a mere bailment, and did not entitle the creditors of Gray to attach the property.

The court also charged the jury that the attachment by the defendants of said horses put an end to said contract or bailment if it was not determined before; and that said Bigelow would have a right to reclaim the horses on the attachment by said defendant. To this charge the defendant excepted.

*Mr. Linsley for defendant.*—A sale of property with a secret condition in the contract that the property shall not pass until paid for, seems to be introducing a principle entirely at variance with the construction given in this state, to the statute of frauds. From the nature of the case, if the principle obtain, the condition of the sale will be kept secret, while the transfer on the face of it is absolute. The buyer and seller are equally interested in concealing the conditions of the sale.

It is said this is a mere bailment. But there is a very wide distinction between the two cases. In the case of a bailment no one is misled or deceived, because the parties do not talk of it as a sale. But in the case of a mere bailment in fact; if the bailor should permit the bailee to call the property his own, and represent it to be a purchase without taking any measures to undeceive the public, it is conceived the creditor of the bailee might attach. This is analogous in its operation to a sale of chattels, absolutely on its face, but when there is at the same time a secret condition, by which it is turned into a mortgage.—Starkie 618 note.

2. Bigelow permitted Gray to call the horses his own without any dissent on his part and thus gave Gray a false credit.

3. The plaintiff acquired no right to the horses by receipting them to the officer. For the procuring the suit to be brought was itself a wrongful act ; and the officer, it appears, acted under the direction of Bigelow, and such a use of process as it disclosed here cannot be set up to protect Bigelow. He must stand on the same footing he would have done, if the horses had not been attached by

Brown. But at all events, as by receipting the property, he would acquire a new lien for a special purpose, in order to avail himself of this he must show that the lien created by the attachment continued at the time of the taking complained of. It does not appear that Brown ever proceeded to judgment or continued the time. But if he had any right as receiptor it was only to the amount of Brown's claim, for that was the extent of his lien.

*Addison, January, 1836.*

*Bigelow vs. Huntley.*

4. In order to maintain trover the right to the possession is indispensable ; and if we are right in the previous point, it is clear that Bigelow had no right to the possession of this property. By the terms of the contract he had for two years parted with the right of possesion, and his remedy, if he have any, before the two years have expired, must be case and not trover.—Saunder's Plead. and Evid. 880.—*Gordon* vs. *Harper,* 7 Tr. R. 9.—*Benjamin* vs. *Bank of England,* 3 Camp. 417.—*Soper* vs. *Sumner,* 5 Vt. R. 274.

5. But the court charged the jury that the attachment by defendant put an end to the contract of sale. This part of the charge rendered immaterial what happened upon the attachment in New York, so that the case may be treated as though no such attachment had taken place.

*H. Seymour for plaintiff.*—The only question in this case is, whether the contract between Bigelow and Gray, was such an one as vested in Gray the title to the horses, so as that the creditors of Gray might attach them.

A sale of personal property on condition that 150 dollars be paid at a future time, does not vest the title in the vendee.—17 Mass. R. 606, *Marston* vs. *Baldwin.*—Starkie 1643-1485 and note.—4 Vt. R. 558.—4 Mass. 405.

It appears that Bigelow agreed with Gray, that he might have the horses for 200 dollars, to be paid in drawing lumber in the course of two years, and if not paid for in that time Bigelow was to have the horses.

It was evidently the intention of the parties, that with the labor of the horses in drawing lumber, Gray should pay for them, and the horses were put in Gray's possession for the purpose of enabling him to do this. It was a mere bailment for this special purpose, and the parties must have had in view the drawing of lumber at Crown-Point where the parties resided. The general property in the horses remained in Bigelow and a special property only in Gray for a specified object. Any act of Gray, or of others in

20

ADDISON,
January,
1836.

Bigelow
vs.
Huntley.

relation to the horses inconsistent with the carrying into effect the contract by drawing lumber with the horses, put an end to the bailment. And the charge of the court that Bigelow could maintain trover for the horses against the person who attached them as Gray's property was correct.—5 Mass. 104.

The opinion of the court was delivered by

PHELPS, J.—The sale of the horses by Bigelow to Gray was conditional. This being the case, the general property never passed. These sales are frequent, and it has always been considered that payment of the stipulated price was a condition precedent.

It is argued that such a sale is fraudulent in its effect. But we believe no case can be found, in which a mere conditional sale of this character has been held fraudulent in itself. The possession is consistent with the contract. And where there is no deception, there is nothing to sustain the suggestion of fraud. False representations may indeed be made, and where this is the case, the usual consequences of fraud follow. But the mere circumstance that the vendee is entrusted conditionally with the goods, and appears as owner, is not sufficient to divest the vendor of his property.

It appears in this case, that Gray called the horses his, with the knowledge of the plaintiff; but this does not appear to have been done, under such circumstances, as required of the plaintiff to disclose their real situation.

The more serious question involved in this case, arises out of the technical objection, that the plaintiff having parted with his right of possession, for a limited period, which had not expired, at the time of the supposed conversion, cannot sustain the action. Upon this point we are not unanimous. Yet there are two different points of view in which the case may be regarded, which have satisfied a majority of the court that the plaintiff is entitled to recover.

*First.* We regard the payment of the stipulated price, as a condition precedent. The general property in the horses, therefore, remained in the plaintiff. By virtue of the attachment at the suit of Brown, and the consequent proceeding, the right of possesion also vested in him. These proceedings, although instigated by the plaintiff, were undoubtedly valid as against Gray ; and the right of the attaching creditor, the officer and the plaintiff, or receiptor, were the same, as if the plaintiff had had no agency in getting up the proceeding. The general property and the right of possession being thus united, the technical rule of law is satisfied.

Addison,
*January,*
1836.

Bigelow
*vs.*
Huntley.

It may be argued that in this view of the subject, the plaintiff is entitled to recover, only to the extent of his interest as receiptman.  This by no means follows.  If the plaintiff be entitled to recover at all, he may doubtless recover to the extent of his interest in the chattels.  And if it be admitted, that an action on the case could be sustained, for the injury to the plaintiff's reversionary interest, there seems to be no reason why, if this action be sustained at all, that injury should not be here considered.  Certain it is, that a recovery here would be a bar to such an action hereafter as no two actions could be sustained, by the same person, for one and the same tort.  It would certainly be an anomaly in the law, if the plaintiff could recover only a partial compensation in this suit, while at the same time the recovery is a bar to a further remedy.

In short, the right of possession being in the plaintiff, the objection fails altogether.  The supposed right of Gray can have no bearing on the question of damages.  Besides, Gray could maintain no action for the taking by the defendant, he not having, at that time, the right of possession.  The reason of the rule therefore fails in this case.

*Secondly.* Another view of the case is this.  The contract being conditional, whatever determines the condition, would revest in the plaintiff the right of possession.  A sale by Gray would have this effect ; and so, in my judgment, would an attempt to abscond with the property, or his becoming bankrupt.  Various contingencies might determine the bailment, and in whatever way this is done, the right of the plaintiff to resume the possession accrues.

This, it seems to me, results from the nature of the contract.  I see not how the right of the plaintiff can otherwise be protected.  And if the creditors of Gray can protect themselves in attaching it, by the technical rule relied on, the conditional contract is converted into an absolute sale ; for clear it is, that Gray can maintain no action against his attaching creditor.

There is, in my judgment, a wide difference between this case and *Gordon* vs. *Hooper.*  There the contract was absolute, here it is conditional.  The general property in the horses is retained by the plaintiff for no other purpose than to guard against the insolvency or want of responsibility of Gray.  If we hold to the legality of this feature in the contract, it seems to me, we must give it full effect, and consider the plaintiff at liberty to determine the bailment and resume the possession, whenever it becomes necesary for the protection of his rights.

ADDISON,
January,
1836.
Bigelow
vs.
Huntley.

On these grounds, a majority of the court are of opinion, that the decision of the court below was right, and their judgment is affirmed.