JOHNSON vs. THE PEOPLE.

On a prosecution for larceny in stealing bank bills of another state, the prosecution
. must show the existence of the banks, and the genuineness of the ,bills.

Evidence that the prisoner had passed the stolen bills as genuine would have been
sufficient. *Semble*. *Per* BEARDSLEY, J.

Evidence that bills of the same kind have been received and passed away in the or-
dinary course of business, as a part of the currency of the country, would be pre-
sumptive evidence of the existence of the bank and of the genuineness of the notes.
*Per* BEARDSLEY, J.

But the fact that a witness for the prosecution had exchanged the bills alleged to have
been stolen, giving other money for them after the larceny, but who did not speak
of any former knowledge of such bills, or express any belief as to their genuineness,
is no evidence upon that point, though it appeared that he was a broker.

ERROR to the general sessions of Albany county. The de-
fendant was indicted together with one Somerville for grand
larceny in stealing sundry bank notes and gold coin, the prop-
erty of one Henry Colby. The prisoner Johnson was tried sep-
arately, and it appeared by the testimony of Colby that he was
decoyed by Johnson, on an idle pretence, to a place on the canal
north of the city of Albany where they met Somerville, when
Colby was induced to take out his pocket book to lend some
money to Johnson to enable him to make a pretended bet with
Somerville, upon which Johnson seized and took the pocket
book from him and handed it to Somerville, who went off with
it. A third associate came up at that time and engaged Col-
by's attention until the defendants had got away. The witness
testified that the contents of the pocket book were about $85,
for the most part in bills of the Northern Bank of Hallowell,
Maine, of denominations under $5, and two gold coins—of $10
and $5.

A. G. Filkins, a broker living at Troy, testified that at a
later hour of the day on which the money was taken, Somer-
ville came to the witness' office to exchange some money, and
that the witness received from him about $40 in the bills of
the Northern Bank of Hallowell, Maine, of similar denomina-
tions with those mentioned by the witness Colby, and a smaller

sum in bills of other eastern banks, and gave him New-York bills in exchange. The prosecution having rested, the prisoner's counsel requested the court to advise the jury " that there must be some evidence given to show that there was such a bank as that mentioned by the witnesses, and that the bills were genuine, or the prisoner could only be convicted of stealing the gold coin, and then the verdict would be for petit larceny." The court declined so to charge, but in their remarks to the jury stated, that " as to proving the existence of the banks and the genuineness of the bills, if the jury believed the testimony of the witness Filkins, it was for them to say whether he, by changing the money in question had not supplied them with the necessary evidence of the genuineness of the bills on the Northern Bank of Hallowell. Mr. Filkins, (the court added,) by his acts in changing the money gave higher evidence than mere opinion; and if the jury believed that these bills were of value, then the amount would exceed $25, and the defendant could be convicted of grand larceny." The prisoner's counsel excepted. After the charge had been given, the prisoner's counsel asked the court to instruct the jury that they could not infer the genuineness of the bills or the existence of the bank from the fact testified to by the witness Filkins, that he had changed the bills. The court declined to give that instruction, and the prisoner's counsel again excepted. The jury found the prisoner guilty of grand larceny, and the court sentenced him to imprisonment in a state prison. Error was brought on a bill of exceptions.

*H. G. Wheaton*, for the plaintiff in error, insisted that the prosecution ought to have been compelled to prove the existence of the bank and the genuineness of the bills; and that the charge as to the effect of Filkins' testimony was erroneous. He cited *The People* v. *Caryl*, (12 *Wend.* 547.)

*A. J. Colvin*, (district attorney,) for the people.

*By the Court,* BEARDSLEY, J. When the district attorney rested the point was raised that " it was incumbent on the prosecution to produce some evidence that there were such banks in existence as those mentioned by the witnesses, and that the bills, alleged to be stolen, were genuine." Not a word of direct evidence had then been given, and none was afterwards received or offered, as to either of these facts, although the bills had been spoken of, incidentally, as bills of certain banks in the state of Maine. No inquiry appears to have been made of any witness with a view to show, with greater certainty, the location or existence of these banks, and it does not appear by the evidence that any one had before ever heard of such bills or banks. It had, however, been stated by the witness Filkins, that in the afternoon of the day when the crime was perpetrated, that having been done about noon, he received in exchange from the prisoner, Somerville, several bank notes, one of which was a $3 bill on the Gardner Bank in the state of Maine, and others, amounting to $40, were one, two and three dollar bills of the Northern Bank of Hallowell in that state. Some other bills were mentioned by the witness, but it is not material to advert more particularly to them. As the evidence in the case was quite sufficient to justify the jury in finding that these bills on the Bank of Hallowell were part of the bills stolen from Colby, their validity was brought directly in question. The witness, Filkins, was a broker in Troy, and in the course of his business may, very probably, have become well acquainted with bills of that bank, so that he was fully qualified to express an opinion on the question of the genuineness of those he received of Somerville. But no inquiry as to his knowledge in regard to such bills or bank was made, and he said nothing whatever on the subject. In this state of the case the objection was taken that the prosecutor, if he would convict the prisoner of larceny in stealing the bills, was bound to give some evidence of the existence of the banks and that the bills were genuine.

If the point had not been distinctly made to the court, it might, perhaps, have been inferred that it was not to be contested before the jury : at all events, if it had not been made as

a legal proposition in the court below, no such question could have been taken here. But the objection was made in explicit terms, and at the earliest moment when it could have been taken. It was not sprung upon the prosecutor by surprise, or at a time when he was precluded from giving evidence to supply the alleged defect, and thus obviate the objection; for had such evidence been offered in this case, when the objection was stated, it would have been the duty of the court to receive it. But none was given or offered, and we must dispose of the question upon the case as it then stood, and not upon assumed facts of which no evidence was given, but which, probably, might have been proved by a witness who had just before been on the stand.

It was held in the case of *The People* v. *Caryl*, (12 *Wend.* 547,) which was an indictment for larceny in stealing notes, purporting to have been issued by the Bank of Upper Canada and by the Hancock Bank in the state of Massachusetts, that evidence should have been given that there were such banks in existence, and that the bills in question were genuine. It was said by the court that the charters of incorporation of the banks need not be produced, but it would be sufficient to show there were such banks *de facto.* And that as to the bills, their genuineness, including the signatures thereto, might be proved by witnesses familiar with the bills, and therefore competent to express an opinion on the subject. That in this respect " evidence of the same character and degree should be given which, on indictments for forging foreign bills, is usually resorted to to prove them counterfeit."

On an indictment for forging bank bills they must be proved to be fictitious, and where the crime charged is the stealing of such bills, they must be shown to be genuine. The same mode of proof is admissible in both cases; and witnesses who, in the course of business, have acquired a knowledge of the genuine notes of the banks by which the bills in question purport to have been issued, are competent to express their opinion on the point in contest on the indictment. Evidence of this description is admissible, although the witness has never seen

the signers of the genuine bills write, and has no knowledge of their signatures but such as has been acquired in receiving and paying out bills. This is an exception to the general rule of law in proving hand-writing, which requires that the witness should have seen the party write; but the exception is allowed on the solid ground that persons who have been in the habit of receiving and paying out bank bills, in the course of business, have had an opportunity to acquire a knowledge of their genuineness in all respects, the signatures included, as satisfactory and convincing at least, as could be obtained by a written correspondence, or by casually seeing a party write. Such witnesses, however, will not be allowed to express any opinion until they are shown to have thus acquired a competent knowledge of the genuine paper, so that they are thus enabled to form an opinion in respect to that in contest. Cashiers and tellers of banks, and brokers and merchants, are usually called as witnesses in these cases; and on showing that they are well acquainted with the genuine paper of the bank, the bills of which, at least such bills in appearance, are in question, their evidence on the point is admissible. (*C. & H. Notes on* 1 *Phil. Ev. note* 918; *McGuire's case,* 2 *East, P. C.* 1002; *United States* v. *Holtsclaw,* 2 *Hay. Rep.* 379; *Moody* v. *Rowell,* 17 *Pick.* 490; *The State* v. *Carr,* 5 *N. H.* 367; *The Commonwealth* v. *Smith,* 6 *S. & R.* 568; *Barnum* v. *Barnum,* 9 *Conn.* 249.) Evidence which shows that notes, purporting to have been issued by a particular bank, have been received and passed away, in the ordinary course of business, as part of the currency of the country, is, in my estimation, quite sufficient, *prima facie,* to prove the existence of the bank, as well as the genuineness of the notes, and such is the evidence usually given in cases of this character. Most of the convictions for forgery and larceny of bank bills, take place upon evidence of this nature.

In the case at bar, no opinion was expressed by any witness as to the genuineness of the notes, nor did it appear that any witness examined, was qualified to express any opinion on the subject; for it was not shown that such notes had ever before

Johnson *v.* The People.

been seen or heard of. The case was put to the jury on the single fact that the bills had been received by the witness Filkins, in exchange for other notes, and that this was competent and sufficient evidence that the bills were of value. The court considered the evidence of Filkins as making out the case upon this point. But the act of Mr. Filkins in receiving these bills, proved nothing until he was shown to have some knowledge of the genuine bills. Had it appeared he had dealt in the bills of the Northern Bank of Hallowell, receiving and paying them out in the course of his business, and that he was thus qualified to distinguish between such as were genuine and those which were not, I grant that the act of receiving these bills in exchange would have proved something, although it would only have shown his opinion that they were genuine and valuable. But the difficulty is, he was not proved to have had any knowledge of such bills, nor, at any time, to have heard that such a bank was in existence. He therefore does not appear to have been competent to express, or form, any opinion on the question of the genuineness of these notes, and his taking them in exchange was no proof of their validity or value.

The jury were not instructed that they might take the fact that the bills were passed off by the accomplice of the prisoner on trial, as evidence of the existence of the banks and that the bills were genuine. This idea was not suggested in the charge, although it was urged on the argument of the cause. I wish we could find that the case had been placed on that ground before the jury; but it was not. The jury were instructed that they might find the notes valid simply because they had been received in exchange. And when the court was requested to charge the jury that they could not infer the genuineness of the bills, or the existence of the banks, from the isolated fact that the bills had been changed by Filkins, the court refused to give any such instruction.

This seems to have been a flagrant case, and it is to be regretted that the conviction and sentence cannot be allowed to stand. But we must not forget that the prisoner was tried un-

der the same law which applies to every other citizen of the state, and that in no case can a conviction be permitted to take place, unless competent evidence of guilt is given. The crime of petit larceny was fully proved, but the evidence on which the jury found the bills to be genuine, was incompetent for that purpose: the crime of grand larceny was therefore not established. Upon the evidence in the case the verdict should have been, guilty of petit larceny. The court erred in the charge to the jury, and the judgment must be reversed. .

*Judgment reversed.*