## SMITH *v.* THE STATE.

INSTRUCTIONS.—ASSUMING FACTS.—Where, in an instruction to the jury in a criminal case, the judge assumed that the crime, if committed, was committed on a particular day, it was held that the instruction, though erroneous in this particular, worked no harm to the defendant, because there was no conflict in the evidence upon that point, and the case was such as to exclude the possibility that the jury could have discredited the witnesses who testified on that subject.

EVIDENCE.—EXISTENCE OF CORPORATIONS.—In a prosecution for larceny, the property in the goods was alleged to be in a railroad company, and it was held that proof of the *de facto* existence of the corporation was sufficient.

EMBEZZELMENT.——The act to punish embezzlement ( Acts Spec. Sess. 1865, p. 204 ), was intended only to punish acts not before made criminal, and though the language of the first section might seem broad enough to cover any felonious taking by a servant of his master's goods, yet construed in connection with the second section, it cannot be held to embrace any taking which before would have been larceny.

APPEAL from the *Wayne* Criminal Circuit Court.

FRAZER, C. J.—This was an indictment for the larceny of goods, laid as the property of *The Chicago and Great Eastern Railway Co.*

The evidence tended to show that the defendant was in the employ of *The Chicago and Great Eastern Railway Co.*, which owned and operated a line of railroad extending from Richmond, in this State, to Chicago, for the transportation of freight and passengers; that he was conductor of one of said company's freight trains; that he entered one of the cars of his train, *en route*, breaking its fastenings for that purpose, broke open the boxes in which the goods were packed for transportation, and took a portion of the contents of the boxes; and that the goods were shortly afterwards found in his possession. All the evidence concurred in fixing the date of the larceny on the 28th of *May*, 1867. There was no evidence tending to show the existence of the company as a corporation *de jure*; none

showing its actual organization as such, pursuant to law. Its existence, by the name given, was proved orally as a fact, but no witness testified whether it existed as a partnership or as a corporation, and there was no evidence offered to prove such existence by reputation. The correctness of the following instruction to the jury is called in question here:

" It is not necessary for the State to prove the articles of association or charter of *The Chicago and Great Eastern Railway Co.;* but it is sufficient to prove by reputation that there is, or was on *May* 28th, 1867, a company known by that name operating such road, and carrying goods, stock and passengers for hire in its cars running along said company's road."

This instruction, it is urged, has three faults. 1. As to evidence by reputation. If this was not correct as a legal proposition (and we think it was correct), it could not possibly have misled the jury or injured the defendant. But it should not have assumed as a fact that the taking, if it occurred, was on a particular day, as that was a question for the jury. If there had been the slightest material conflict in the evidence upon this subject, or if the case did not exclude the possibility of the jury having discredited the evidence of the witnesses who testified upon the subject, this fault in the instruction would require a reversal of the judgment; but, as already stated, the evidence all concurred upon this matter, and it came from the same witnesses by whose testimony the *corpus delicti* was maintained. Without crediting these witnesses, such is the nature of the whole evidence that there could have been no verdict of guilty. It seems, therefore, impossible, that injury could have resulted to the defendant on account of this feature of the instruction. Under such circumstances, section 160 of the criminal code forbids a reversal. 2·G. & H. 427.

But there is another objection urged to this instruction, which, if well taken, is substantial. It is insisted that the charter or articles of association, showing a valid organiza-

tion of the railroad company as a lawful corporation, was the best, and, therefore, until its absence was accounted for, the only evidence by which the existence of the corporation could properly be established. We do not concur in this proposition as applicable to this case. A *de facto* existence of the corporation was only necessary to be shown. Surely the property of corporations not lawfully organized, though existing in fact, is not to be declared by this court the legitimate prey of thieves, to be appropriated without criminal responsibility, unless overwhelming authority compels us so to declare. There are cases which would lead to this result.

We are referred to *The People* v. *Peabody*, 25 Wend. 472. The case is not in point. In that case, the articles of association of a bank were produced, and it was held that the evidence was sufficient without proving that the bank had commenced business. An instruction to the jury, that it was immaterial whether or not there was in existence such a bank as the one named was sustained. *The People* v. *Stearns*, 21 Wend. 409, is also cited. In that case, it was merely held that the production of the charter in evidence was sufficient proof of the corporate existence of the bank. Nor is *De Bow* v. *The People*, 1 Denio 9, of any avail upon the question. There, to prove the existence of *The Bank of Warsaw*, the articles of association were in evidence, but the proof was held insufficient, because the only act under which the corporate organization could be so accomplished was void, not having been constitutionally passed by the legislature. But in *The People* v. *Davis*, 21 Wend. 309, it was said that secondary evidence to prove the existence of a corporation, such as the acts and operation of the institution, and the like, had invariably been received in that State, at the oyer and terminer. So, also, in *The People* v. *Caryl*, 12 Wend. 547; *Johnson* v. *The People*, 4 Denio, 364; *The People* v. *Chadwick*, 2 Park. 163; *Dennis* v. *The People*, 1 *id.* 469. The same rule seems always to have prevailed in *Georgia* and *Ohio*. *The State* v. *Calvin et al.*, R. M. Carl. 151;

*Sosser* v. *The State*, 13 O. 453; *Reed* v. *The State*, 15 O. 217. In the last case, it is said that the existence of the corporation may be proved by reputation. In *New Jersey* and *Tennessee*, the strictest proof seems to be required in such cases. *Stone* v. *The State*, 1 Spencer, 401; *Jones* v. *The State*, 5 Sneed, 346. But the best reason is the other way.

The remaining question in the record is whether the offense could be larceny, especially in view of the act against embezzlement. Acts Spec. Sess. 1865, 204. The question arises out of the evidence, and also upon instructions to the jury, given and refused. Prior to the passage of the act alluded to, there is no question that the evidence would have made a case of larceny. The act is very loosely and carelessly framed. The language of the first section would, perhaps, make every felonious taking by a hired servant of the goods of his master embezzlement, no matter whether the servant had the custody of the goods or not; and, as the punishment prescribed is not the same as for larceny, there is great force in the proposition that larceny could no longer be maintained in such cases. But it is very clear that such was not the purpose of the legislature. The second section of the act shows that the intention of the first was merely to provide for the punishment of acts not previously criminal. It is there declared that, "as there is no law punishing the offense aforesaid, an emergency is hereby declared to exist for the taking effect of this act; therefore, the same shall be in force from and after its passage." This seems to interpret the first section, and limit its application to cases not criminal under then existing laws.

The judgment is affirmed, with costs.

*J. P. Siddall, M. Wilson, L. D. Stubbs* and *S. A. Huff,* for appellant.

*J. H. Popp, N. H. Johnson* and *H. C. Fox,* for the State.

OPINION ON PETITION FOR A REHEARING.

FRAZER, C. J.—Upon consideration of a careful argument upon an application for a rehearing, we have been led to a

careful re-examination of the questions in this case, result-
ing in no change of determination. We think it well, how-
ever, to add something to what is contained in the previous
opinion.

It was not noticed, when the case was first considered,
that the evidence was not all before us. It escaped the ob-
servation of counsel as well as of the court. It appears by
the bill of exceptions, that certain papers were in evidence.
They are omitted from the bill of exceptions. This pre-
vents us from passing on the question of the sufficiency of
the evidence to sustain the finding. *The State* v. *Swarts*, 9
Ind. 221.

The case made by the evidence would have been larceny,
before the enactment of the act of 1865, defining the crime
of embezzlement. It is contended that under that act the
case is embezzlement. The question is one of construction.
This question is easy when we shall have, by recognized
methods, ascertained the intention of the legislature, for
that is the very purpose of statutory construction. To this
end the language of the act itself, and of every part of it, is
to be first resorted to, including even its title, and its pre-
amble, if there be a preamble. Where in an act it is de-
clared that it shall receive a certain construction, the courts
are bound by that construction, though otherwise the lan-
guage would have been held to mean a different thing. In
the case before us, if it had been declared that the language
of the first section should not be so construed as to embrace
cases which formerly would have been larceny, we suppose
there could be no two opinions upon the question presented.
This was not done, it is true, but it seems to us that the second
section contains precisely as clear an indication of the legis-
lative intent, when, in assigning a reason for the emer-
gency clause, putting the act into immediate effect, it is de-
clared that "there is no law punishing the offense" de-
fined. If it had been intended to embrace offenses already
punishable, this would have been simply a falsehood. The
legislature certainly knew its own intent, and to the major-

ity of the court, this language is conclusive that it was meant by the act to provide for cases not previously punishable. A re-examination of this ground has, with the majority of the court, but confirmed the view in which all were at first united. Judge *Gregory* has, however, after careful thought, found himself unable to concur in this reasoning.

But there is another independent ground upon which the same construction of the statute of 1865 can be sustained by most respectable authority, as well as sound reason. The act omits to make, in terms, possession of the property embezzled by virtue of the offender's employment an element of the offense. In that respect, it greatly departs from the form of the *English* and most of the *American* statutes upon the subject, and it is this which furnishes a foundation for the point made by the appellant, now under discussion. Purloining, or secreting, or fraudulently converting, the goods of an employer, are expressions broad enough to embrace a felonious taking. This interpretation would make the case at bar embezzlement. But it is hardly respectful to suppose that the legislature intended the folly of changing the name of certain crimes from larceny to embezzlement, not affixing a punishment very materially different. *Massachusetts* had a statute applying merely to officers and employees of incorporated banks, which was, in the respect named, like ours. So also has *Pennsylvania*. And yet it was held, after earnest controversy, in the former State, that the offense was not proved, unless it appeared that the defendant was, in consequence of his employment, intrusted with the funds embezzled. 2 Amer. Crim. Law, § 1,907, note *b*.

Mr. *Bishop* says that "some defects, real or imaginary, in the law of larceny, led to the enactment in *England* and in this country" of such statutes, and that though they are clothed in diverse language, yet decisions upon any one of them may be received as safe guides for the exposition of any other. 2 Bish. Crim. Law, §§ 280, 285.

As to the instruction, it is deemed necessary to say, that from all the evidence it is quite clear, that if the offense was committed at all, it was on the 28th of *May*, and that there was no controversy as to the date of the transaction. It is also clear, from the bill of exceptions, that the written evidence which was admitted, but is not contained in the bill of exceptions, could 'not have tended, in the slightest degree, to fix any other date. It is also clear that all the evidence tending to show a corporation on the 28th of *May*, was, if sufficient to prove such existence at all, ample to show it at all times from *February* until the time of the trial. The witness speaks in the present tense, but evidently he meant to speak as to the whole period during which he was familiar with the company.

Now what we mean to decide is simply that though the court should not have assumed that the transaction occurred on that day, yet that the error was harmless to the defendant.

*W. D. Lee* and *J. W. Gordon*, for appellant.