BLACKWELL, THOMPSON & CO. v. WALKER BROS. & CO.

DEAL v. HECHT.

(*Circuit Court, E. D. Arkansas.* ———, 1880.)

1. CONDITIONAL SALES — STATUTE OF FRAUDS — RECORDING ACTS OF STATE OF ARKANSAS.

Conditional sales were valid at common law, and their validity was not affected by the English statute of frauds, nor are they within the recording acts of the state of Arkansas.

2. SAME — VENDOR AND VENDEE — CREDITORS AND PURCHASERS.

Such sales, oral or in writing, are valid in Arkansas, and creditors of and purchasers from the conditional vendee acquire no right to the property as against the vendor, who has been guilty of no fraud and no laches in asserting his rights.

3. SAME — STATUTE OF ARKANSAS, GANTT'S DIG. § 2957.

If conditional sales are within the statute of frauds of the state of Arkansas, (section 2957, Gantt's Dig.,) it has no operation on them until the possession has continued in the vendee for five years.

These cases raise the question of the validity of conditional sales.

In the first case the plaintiffs agreed to sell one Cowger a gin, portable steam-engine, and fixtures for the sum of six hundred and twenty-three dollars and seventy-eight cents, ($623.78,) upon his paying the agreed price. Cowger executed his note for the price, and plaintiffs gave him possession of the articles upon the distinct verbal agreement that the right of property therein should not pass to him, but should remain in the plaintiffs until the price agreed upon was fully paid. The defendants were creditors of Cowger at the time he received possession of the chattels from the plaintiffs, and subsequently recovered judgment on their debt and caused an execution to be levied on the chattels as the property of Cowger. Cowger still owes $400 on the purchase.

The vendors here filed a petition setting up these facts, and asking that the property be discharged from the levy of the execution, and the marshal ordered to deliver same to them.

In the last case there was a conditional sale, substantially

in the same terms as in the first, of work oxen and wagons, and the difference in the two cases is that, in the latter case, the conditional sale is evidenced by a written contract of the parties; and the vendee, without paying the stipulated price for the property, sold and delivered it to the defendant, who purchased it in good faith and without notice of the vendors' want of title, and the plaintiff, the first vendor, has brought an action of replevin for the property.

*M. W. Benjamin,* for plaintiff in first case.

*Erb & Erb,* for defendant in first case.

*J. M. Moore,* for plaintiff in second case.

*Henderson & Caruth,* for defendant in second case.

CALDWELL, D. J. Conditional sales were valid by the common law, and their validity was not affected by the provisions of the English statute of frauds, nor are they within the recording acts of this state. In the case of a chattel mortgage, the property and possession of the chattel, in this state, is in the mortgagor, and neither the property nor the possession is changed by the mortgage; but the mortgagee acquires, in the language of the statute, "a *lien* on the mortgaged property from the time the same is" filed for record. Gantt's Digest, § 4288. In a conditional sale, the property in the chattel is separated from the possession, the property remaining in the vendor, and the possession only passing to the vendee. The same thing happens upon the loan, hire, or other like bailment of chattels; in all such cases the right of property in the thing bailed remains in the bailor, and the actual possession passes to the bailee. If one loan or hire his horse to his neighbor, he does not have to reduce the contract for the bailment to writing, and have it signed, acknowledged, and recorded, in order to prevent the bailee from making an effectual sale of the horse, or his creditors from seizing it on execution for his debts.

The possession of personal property is undoubtedly presumptive evidence of title, but it is also a general rule that a vendor in possession of such property can impart no better title to it than he himself possessed. There are some exceptions to this rule, but the case of a vendee in possession of chattels,

not to be consumed in their use, under a conditional contract of sale like these we are considering, is not one of them.

One of the earliest cases in this country on the subject of conditional sales was *Hussey* v. *Thornton,* 4 Mass. 405. In that case the contest was between the vendor and an attaching creditor of the vendee whose debt was contracted *prior* to the conditional sale. The court held the conditional sale valid against the attaching creditor, but in the course of the opinion in the case *Parsons,* C. J., said: "Had the demands of these attaching creditors originated while the goods were in the possession of Tood & Worthly, [the conditional vendees,] so that it might be fairly presumed that a false credit was given them, or had they sold them *bona fide* for a valuable consideration, our opinion would have been otherwise." This expression of opinion was not necessary to a decision of the case before the court, and afterwards, when a case did arise making it necessary to decide whether such sales were valid against creditors whose debts were contracted while the vendee was in possession of the property under such conditional purchase, the *dictum* in *Hussey* v. *Thornton* was disapproved, and *Parker,* C. J., who delivered the opinion of the court, said: "If the transaction is fraudulent, the vendor setting up a condition to the sale, yet suffering the vendee to be in possession, exercising full rights over the property, with the intent and purpose of enabling him to obtain credit on the strength of the property, he will not be able to avail himself of such condition, but the sale will be held to be absolute in regard to creditors. But if *bona fide,* and the object of the condition was merely security to the vendor, he shall not lose his property because some creditor of the vendee supposed it to belong to him." *Ayer* v. *Bartlett,* 6 Pick. 71.

Later cases in the same state affirm the law as laid down in *Ayer* v. *Bartlett,* and it seems to be the settled doctrine of the courts in this country. *Arrington* v. *Houston,* 38 Vt. 448; *Bigelow* v. *Huntly,* 8 Vt. 151; *Buckmaster* v. *Smith,* 22 Vt. 203; *Chaffe* v. *Sherman,* 26 Vt. 237; *Bradley* v. *Arnold,* 16 Vt. 382; *Paris* v. *Vale,* 18 Vt. 277; *Barrett* v. *Pritchard,* 2 Pick. 512; S. C. 13 Am. Dec. 449, note; *Marston* v. *Bald-*

win, 17 Mass. 606; *Merrill* v. *Rinker*, 1 Bald. C. C. R. 528; *Blood* v. *Palmer*, 11 Me. 414; *Miller* v. *Bascom*, 28 Mo. 352; *Rogers' Locomotive Works* v. *Lewis*, 4 Dillon, 158; S. C. 3 Cent. L. J. 784. And it seems to me to be equally well settled that the vendor, who has been guilty of no laches in asserting his right to the property, may recover it from a *bona fide* purchaser from the vendee. *Coggill* v. *Hartford R. Co.* 3 Gray, 545; *Ballard* v. *Burgett*, 40 N. Y. 314; *Bigelow* v. *Huntly*, 8 Vt. 151; *Sargent* v. *Metcalf*, 5 Gray, (Mass.) 306; *Hart* v. *Carpenter*, 24 Conn. 427; *Parmelee* v. *Catherwood*, 36 Mo. 479; *Griffin* v. *Pugh*, 44 Mo. 326; *Little* v. *Page*, 44 Mo. 412; *Berrner* v. *Puffer*, 114 Mass. 378; *Thomas* v. *Winters*, 12 Ind. 383; *Dunbar* v. *Rawles*, 28 Ind. 322; *Bailey* v. *Harris*, 8 Iowa, 333; *Hamans* v. *Newton*, 4 FED. REP. 880.

In this state the settled rule of the common law, that a purchaser of a chattel acquires no better title than his vendor possessed, has not been changed by statute in its application to conditional sales; and creditors and purchasers of the conditional vendee acquire no right to the property as against the vendor, who has been guilty of no fraud and no laches in asserting his rights. If the property had been of a kind to be consumed in its use a different question would be presented. Counsel for defendants insist that conditional sales not reduced to writing, and acknowledged and recorded, are void against purchasers and creditors of the vendee under the statute of frauds of this state. Section 2957, Gantt's Digest.

This section of the statute of frauds of this state originated in Virginia at an early day. Though applicable to all goods and chattels, it is said to have had its origin in a practice connected with slave property. It had come to be common for slave owners to transfer the mere possession and use of some portion of their slaves to members of their families—particularly to daughters upon their marriage—by way of loan, or upon some verbal agreement or understanding whereby the property in the slaves did not pass with the possession. In this way, without the intervention of a trustee, the beneficial use of

the slaves was secured to the wife, free from the marital rights of the husband and the claims of his creditors. The possession thus acquired was often continued for many years, under circumstances calculated to mislead persons dealing with the party in possession, and the object of the statute was to make the apparent ownership arising from such possession, whatever the nature of the bailment or trust might be, actual and effectual against the real owner, in favor of creditors and purchasers of one who had so remained in possession for a period of five years.

The section was adopted in Kentucky in 1796, and in the revision of the statutes of that state, in 1852, conditional sales were in terms brought within its operation. It was adopted by the territories of Missouri and Arkansas, and by each of those states, and Illinois and Texas. As originally adopted by Kentucky, and the territories of Missouri and Arkansas, and by the state of Missouri in her first code of laws, it read as follows, including the clause in brackets, which are inserted for the purpose of calling attention to subsequent alterations: "Where any goods or chattels shall be pretended to have been loaned to any person, with whom or those claiming under him possession shall have remained for the space of five years, without demand made and pursued by our process of law on the part of the pretended lender; or limitation shall be pretended to have been made of any use of property by way of condition, reservation, or remainder, [or otherwise in goods or chattels, the possession whereof shall have so remained in another, *as aforesaid,*] the same shall be taken, as to all creditors and purchasers of the persons *so remaining in possession,* to be void, and that the absolute property is with the possession, unless *such loan,* reservation, or limitation of the use of property were declared by will or deed in writing, proved or acknowledged, and recorded as required by this chapter."

In the Revised Statutes of this state the clause in brackets is omitted, except the words "in another." Whatever the design of this omission may have been—if, indeed, it was designed, and not a clerical misprision—it is still clear that the

words "so remaining in possession," in the latter part of the section, refer to the "possession * * * for the space of five years," previously mentioned. If this be not so, then those words have nothing to rest on, and are meaningless. But they are not meaningless. They perform an important office, and make the five years' possession qualify the whole section.

In the revision of 'he statutes of Missouri, in 1835, the words "as aforesaid," italicized in the clause in brackets, were omitted; and in *Miller* v. *Bascom*, 28 Mo. 352, it was contended that a verbal conditional sale of chattels was a "reservation or remainder," in favor of a vendor, and void as against the creditors and purchasers of the vendee, without reference to the period of his possession. But the court held otherwise, and declared the act, notwithstanding the omission of these words, had no operation in such cases, unless the possession of the chattels had continued in the vendee for five years.

And everywhere, and always, it has been held that the possession in all the cases of bailment, trust, condition or reservation embraced by the section must have been continued for five years before the owner's rights are affected.

In the enrolled act there is a comma after the word "lender," and not a semicolon, as in the printed statute. Punctuation marks are no part of the English language, and connot be admitted to control the proper sense of words used; but they are sometimes used in such a way as to lead to a misinterpretation of a statute on a casual reading, and such is the tendency of the erroneous punctuation in this section.

Conceding, but not deciding, that this section embraces conditional sales, still the defence based on it must fail, because the possession of the vendees, under the conditional sales in these cases, was less than a year.