MARKS v. STATE OF INDIANA.

[No. 27,593.   Filed March 17, 1942.   Rehearing denied April 20, 1942.]

12

*George F. Stevens,* of Plymouth, *Floyd O. Jellison,* of South Bend, *Harry L. Crumpacker,* of Michigan City,

and *Robert H. Moore* and *Milton Fagan,* both of Gary, for appellants.

*George N. Beamer,* Attorney General, and *Glen L. Steckley,* Deputy Attorney General, for the State.

· FANSLER, J.—The appellants were tried upon an indictment in two counts and were found guilty upon the first count.

Error is assigned upon the overruling of· motions to quash the first count of the indictment upon the ground that the offense is not charged with sufficient certainty. It is contended that the first count is bad for duplicity.

The first count, omitting the formal parts, is as follows:

"... did then and there unlawfully and feloniously place and deposit cartridges containing dynamite upon and about the premises of the Indiana and Michigan Electric Company in the immediate proximity of a steel tower supporting lines for the transmission of electrical energy which tower was located Southeast of the town of Benton, in said· county and state, for the purpose and with the intent then and there to injure the property of the said Indiana and Michigan Electric Company, without the consent of ·the said Indiana and Michigan Electric Company, by exploding said dynamite at said time and place in such a manner as to injure and destroy the said property. . . ."

Section 10-1904, Burns' 1933, § 2969, Baldwin's 1934, is as follows: "Whoever carries concealed, on or about his ' person, any cartridge, shell or bomb containing dynamite or other nitro-explosive compound [f] or any other than legitimate and lawful use or uses, or attempts to use the same in any manner to the injury ·of persons or property, or shall place or deposit the same upon or about the premises of another without the consent of such person shall, upon conviction thereof,

be imprisoned in the penitentiary not less than two [2] years nor more than fourteen [14] years. [Acts 1889, ch. 140, § 4, p. 279.]"

Section 10-305, Burns' 1933, § 2437, Baldwin's 1934, is as follows: "Whoever wilfully and maliciously prepares, places, arranges, sets or distributes, or aids, counsels or procures the preparing, placing, arranging, setting or distributing of any combustible material, explosive substance, instrument, liquid or other substance in or about any house, building or other structure, or any ship, vessel, steamboat or other watercraft, or any lumber, agricultural product, railroadcar, airplane, balloon, electric car, automobile, motor vehicle, wagon or any farming or agricultural implement or machinery, or any building materials, manufactured product or material intended for manufacture, or any property mentioned in or comprehended by any of the foregoing sections of this act, with the intent to set fire to, burn, blow up, or destroy any such property, or have the same set fire to, burned, blown up or destroyed, such property being the property of another; or being insured against loss or damage by fire and such act or acts of preparing, placing, arranging, setting or distributing, or such aiding, counseling or procuring any such act or acts, being done with the intent to prejudice or defraud the insurer, shall be guilty of a felony and shall, upon conviction thereof, be imprisoned in the state prison not less than one [1] nor more than three [3] years. [Acts 1927, ch. 44, § 5, p. 122.]" The statute, of which this latter enactment is a part, contained the following repealing clause: "All laws and parts of laws in conflict herewith are hereby repealed." Section 8.

The statute of 1889. (Acts 1889, ch. 140, § 4, p. 279) declares against (1) carrying concealed on the person

any cartridge, shell, or bomb containing dynamite or other nitro-explosive compound for an unlawful purpose; (2) attempting to use the same in any manner to the injury of persons; (3) attempting to use the same in any manner to the injury of property; and (4) placing or disposing of the same upon the premises of another without his consent. The penalty is imprisonment from two to fourteen years.

The statute of 1927 (Acts 1927, ch. 44, § 5, p. 122) declares against preparing, placing, arranging, setting, or distributing any combustible material or explosive substance in or about the property of another, with the intent to set fire to, burn, blow up, or destroy any such property. The penalty is imprisonment from one to three years.

The later statute is broader than the earlier one in that it applies to any combustible material or explosive substance, while the earlier statute applies only to dynamite or other nitro-explosive compound. The later statute is narrower in that it is limited in its effect to cases in which there was an intent to set fire to, burn, blow up, or destroy property. The earlier statute condemns placing the explosive described upon the premises of another without his consent, and regardless of the intention involved, while the later statute prescribes punishment only in case the explosive described is placed upon the premises of another with a specific intention to set fire to, burn, blow up, or destroy the property. The earlier statute declares against attempts to use dynamite or nitro-explosives to the injury of persons. The later statute is not broad enough to cover attempts at personal injury. The earlier statute declares against carrying dynamite concealed for an unlawful purpose or use. The later statute has no such provision.

It is apparent that the later statute in some respects overlaps the former, and that certain acts which would have come within the terms of the early statute are covered by the later statute. Thus, to burn a building is to injure property, and an attempt to use an explosive so as to set fire to, burn, blow up, or destroy a building would come within the earlier statute. One who places dynamite or a nitro-explosive in the building of another, in an attempt to burn it or blow it up, would have been guilty under the earlier statute, but he would also be guilty under the later statute, and the penalty under the later statute is not so great. But suppose a person should place dynamite or a nitro-explosive upon the property of another, without his consent, for the mere purpose of hiding it, and without any intention to set fire to, burn, blow up, or destroy the property. He would be guilty under the earlier statute and subject to imprisonment for not less than two nor more than fourteen years, whereas if he placed it there with intent to destroy property, he would be punishable by one to three years' imprisonment only, and, in such a case, where the evidence is clear that the explosive had been put upon the premises of another without his consent, the defendant might feel impelled to prove that it was placed with the intention to blow up a building in order to limit the penalty to the shorter imprisonment, when, by all rational standards, it would seem that the mere hiding of an explosive upon the premises of another without his consent, and without an intention to harm his property, should merit less punishment than so placing it with a deliberate intent to destroy property.

In Lewis' Sutherland Statutory Construction, a long-recognized and respected authority, it is said (Vol. 1,

§ 267, pp. 510, 511) : "If two statutes can be read together without contradiction, or repugnancy, or absurdity, or unreasonableness, they should be read together, and both will have effect. It is not enough to justify the inference of repeal that the later law is different; it must be contrary to the prior law. It is not sufficient that the subsequent statute covers some or even all the cases provided for by the former, for it may be merely affirmative, accumulative or auxiliary; there must be positive repugnancy; and even then the old law is repealed by implication only to the extent of the repugnancy. If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony and without absurdity, both will be upheld, and the later one will not be regarded as repealing the others by construction or intendment. As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable." And it is also said (Vol. 2, § 377, p. 725) : "It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature."

"It is presumed that the Legislature does not intend an absurdity, and such a result will be avoided if the terms of the act admit of it by a reasonable construction; and 'absurdity' meaning anything which is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of men of ordinary intelligence and discre-

tion." Words and Phrases, Permanent Edition, Vol. 1, p. 177, and cases cited.

Adopting the rule of rationality and ordinary intelligence and discretion, we cannot ascribe to the Legislature an intention to punish the placing of explosives upon the property of another, with intention to destroy the property, with imprisonment of from one to three years only, and an attempt to use an explosive to the injury of property in some lesser degree with a punishment of imprisonment from two to fourteen years; nor can we attribute to the Legislature an intention that one who places an explosive upon the property of another for the mere purpose of hiding or concealing it, or for safe-keeping, should be punished by imprisonment of from two to fourteen years, while one who places an explosive upon another's property with intent to destroy it should be punished by imprisonment of from one to three years. Nor can we conceive that the Legislature intended to punish one who carries dynamite or nitro-explosives concealed upon his person for some minor unlawful use with imprisonment of from two to fourteen years, while one who actually uses an explosive for the destruction of another's property should be imprisoned from one to three years only. Such an intention is so illogical and unnatural, so contrary to the impulses of ordinary men, that it is inconceivable that the legislators, knowing the situation, intended such a result. The gravamen of the offenses declared against in both statutes is the encroachment upon the rights of others, and the fact that the first statute refers only to dynamite and nitro-explosives (possibly the only high explosives known to the Legislature at the time), and the second covers all explosives, could have furnished no basis for a difference in punishment.

We are constrained to conclude that the later statute was intended to repeal all of the provisions of the earlier statute except those providing for punishment for the use, or attempted use, of dynamite or other nitro-explosive compound to the injury of persons. It may be reasonably concluded that the Legislature intended to continue the larger punishment in the case of injury to, or attempts to injure, persons. Injuries to property not covered by the later statute may be punished under the malicious trespass statute (§ 10-4509, Burns' 1933, § 2489, Baldwin's 1934), and leaving them to be thus punished is consistent with the reduction of punishment in the later statute, and it is more reasonable to conclude that it was intended that they should be thus punished than that lesser offenses were intended to carry larger penalties. *Douglass et al.* v. *State* (1880), 72 Ind. 385.

The first count of the indictment charges the placing and disposal of cartridges containing dynamite upon the premises of another without the consent of the owner. This would have been sufficient to charge a crime under the earlier statute. It also charges that the placing was for the purpose and with the intent to injure the property of the owner by exploding the dynamite in such a manner as to destroy the property. This sufficiently charges an offense under the later statute.

Since the former statute must be treated as repealed, there is no duplicity, and the offense is charged with sufficient certainty. The allegation that the placing and disposal of cartridges containing dynamite upon the premises was without the consent of the owner is mere surplusage and could not tend to mislead the defendants as to the charge against which they were called upon to defend themselves.

It is asserted that the trial court abused its discretion in denying the appellants separate trials. It is insisted that the verified motions for separate trials disclose that a great volume of evidence would be offered, admissible as to one defendant and incompetent as to the others, and that the result would be so confusing that the jury would be unable to segregate and properly apply the evidence. But the soundness of the discretion exercised by the court is not to be tested by what was asserted by the defendants in their motions, but by what transpired at the trial. It is suggested in the brief that on thirty-eight separate occasions the court admonished the jury that certain evidence was admissible as to one, but not as to the other defendants. In the brief the appellants point to no evidence which tended to confuse the issue or that might have prejudiced the rights of any of them. We have read the abstract of the evidence in the appellants' brief, and we are not persuaded that the court abused its discretion.

Error is predicated upon the sustaining of a demurrer to a special plea of former adjudication by the appellant Marks. If this was error it was harmless, since former jeopardy may be proven under the plea of not guilty. *Barker* v. *State* (1919), 188 Ind. 263, 120 N. E. 593; *Cambron* v. *State* (1922), 191 Ind. 431, 133 N. E. 498; *McCoy* v. *State* (1923), 193 Ind. 353, 139 N. E. 587.

At the close of the State's case the appellants sought a directed verdict upon the ground that want of consent of the owner is a necessary element of the crime, and that there was no competent evidence that the owner did not consent to the placing of the dynamite and the blowing up of the property. If want of consent were a necessary allegation, the very

fact that the property was destroyed, causing great damage to the owner, would of itself be a sufficient basis for the conclusion that the owner did not consent.

There was no error in refusing to require the State to elect upon which count of the indictment it desired to proceed. The counts were obviously based upon the same transaction, and in such a case the doctrine of election does not apply. Ewbank's Criminal Law, 2d Ed., § 327, p. 200; *Knox* v. *State* (1905), 164 Ind. 226, 73 N. E. 255.

The appellants assert that there were such irregularities in the proceedings of the court during the trial as to prevent them from having a fair trial. They refer in the brief to oral instructions to the jury concerning certain evidence, and to certain statements of the prosecuting attorney in his opening statement, in cross-examining witnesses, and in closing argument. The objection to these various instructions and statements, if any, and the ruling of the court thereon, is not referred to in the propositions, points, and authorities. Nowhere in the brief is it disclosed that there was an objection to the oral instructions complained of, or that upon objection the court refused to admonish the jury to disregard the statements of the prosecuting attorney, or that there was a timely motion to withdraw the submission of the case from the jury. In the absence of a showing in the brief, it will be assumed that the court's oral instructions were given without objection, and that if the statements of the prosecuting attorney, which are alleged to constitute misconduct, were called to the attention of the court, the jury was admonished not to consider them, and that there was no motion to withdraw the submission. The court will not search the record to find grounds upon which to reverse.

Error is assigned upon refusal of the court to admit defendant Marks' exhibit 3 in evidence. This exhibit is described in the brief as being a certified copy ██ of an affidavit upon which the appellant was tried in the Marshall Circuit Court. The exhibit is not set out anywhere in the brief or in the motion for a new trial, nor is it suggested that it is in the record. The appellants say that the exhibit was competent evidence to prove former jeopardy. If there is any ground which would have justified its exclusion, it was not error to exclude the evidence, and, without the exhibit before us, we are unable to say that it was erroneously excluded.

Error is assigned upon the refusal to permit a certain witness to testify. Under the rule announced in *Brown* v. *State* (1939), 216 Ind. 106, 23 N. E. (2d) 267, no question is presented. But the offer to prove, set out in the brief under propositions, points, and authorities, clearly indicates that there was no error in rejecting the testimony.

Under an assignment that the verdict of the jury is not sustained by sufficient evidence, the only contentions made are that there is no evidence that the Indiana and Michigan Electric Company did not consent to the placing of the dynamite on its premises, and that there is no evidence that the Indiana and Michigan Electric Company is a legal entity capable of holding property. The first contention has already been disposed of.

There was evidence that the property damaged was the property of the Indiana and Michigan Electric Company, and evidence that some of the witnesses worked for that company in the operation of electric lines. Part of the records of the Recorder of Elkhart County were read in evidence, in which it is recited:

"Whereas, Indiana and Michigan Electric Company is a corporation organized and existing pursuant to an act of the General Assembly of the State of Indiana. . . ." To the question: "Do you know what the Indiana and Michigan Electric Company is?" the same witness answered: "Yes," and thereafter read the excerpts from his records. By statute, corporations are required to file their articles of incorporation issued by the Secretary of State in the office of the recorder.

The indictment describes the property as belonging to the Indiana and Michigan Electric Company. No averment that the injured party was a firm, corporation, or association was necessary. *Davis* v. *State* (1925), 196 Ind. 213, 147 N. E. 766. What it is unnecessary to allege, it is ordinarily unnecessary to prove. There is ample evidence that the injured property was held in the name of the Indiana and Michigan Electric Company. There is some evidence tending to show that the company is a corporation. It is immaterial whether it is legally organized or a mere *de facto* corporation. The property belongs to some one. In *Smith* v. *State* (1867), 28 Ind. 321, 322, 323, 324, the indictment was for larceny of goods as the property of *"The Chicago and Great Eastern Railway Co."* "There was no evidence tending to show the existence of the company as a corporation *de jure;* none showing its actual organization as such, pursuant to law. Its existence, by the name given, was proved orally as a fact, but no witness testified whether it existed as a partnership or as a corporation, and there was no evidence offered to prove such existence by reputation." This was treated as sufficient, and the judgment was affirmed. The court considered the cases that hold that strict proof is necessary, but said: "But the best reason is the other way." As reason for its

conclusion, the court said: "A *de facto* existence of the corporation was only necessary to be shown. Surely the property of corporations not lawfully organized, though existing in fact, is not to be declared by this court the legitimate prey of thieves, to be appropriated without criminal responsibility, unless overwhelming authority compels us so to declare." We think the evidence sufficient to show a *de facto* corporation.

In sustaining the sufficiency of the first count of the indictment, we have departed from the theory of the court below. It was there contended by the State that the first count of the indictment was sufficient under the earlier statute, which we have held to have been repealed and no longer in force, and that it did not state a cause of action under the later statute. The defendants contended that the first count of the indictment stated a cause of action under both statutes, and that therefore it was bad for duplicity. The same contentions were maintained in the briefs and in the argument at the bar of this court. It is clear that the court below overruled the motions to quash upon the theory that the earlier statute was in force, and that the first count did not state a cause of action under the later statute. This conclusion is unavoidable, since the judgment entered upon the verdict of guilty sentenced the defendants to imprisonment for from two to fourteen years, the penalty provided in the old statute. There is a general rule that the theory adopted by the court and the parties in the trial of a case will be accepted and followed on appeal. But there are exceptions to the rule. See *Southern Railway Company et al.* v. *Howerton* (1914), 182 Ind. 208, 105 N. E. 1025, 106 N. E. 369, and *Southern Surety Company et al.* v. *Kinney* (1920), 74 Ind. App. 205, 127 N. E. 575. When a question is presented by the record,

it is decided upon the record, and the theory adopted by the parties in the trial and in argument will not be followed when a decision based upon that theory would create a precedent calculated to mislead the profession and to lend confusion in further litigation. *Big Creek Stone Co. et al.* v. *Seward et al.* (1896), 144 Ind. 205, 42 N. E. 464, 43 N. E. 5; *Cleveland, C. C. & St. L. R. Co.* v. *Moore, Receiver, et al.* (1908), 170 Ind. 328, 82 N. E. 52, 84 N. E. 540; *Keeshin Motor Express Co. et al.* v. *Glassman* (1942), 219 Ind. 538, 38 N. E. (2d) 847. To sustain the view adopted by both parties and by the court below, and hold the indictment good under the earlier statute, would require that we overlook our conclusion that the statute is repealed and is no more and might lead to future attempts at prosecutions under the statute and the embarrassment of courts in the determination of the issue should the indictment be attacked upon the ground that the statute has been repealed.

The judgment of imprisonment of from two to fourteen years is clearly erroneous, since the indictment was only good under the later statute, which provides a penalty of from one to three years. There was no motion to modify the judgment for the obvious reason that the trial had proceeded upon the theory adopted by all that if the indictment was good at all, it was under the old statute. Thus it was assumed by both sides that any available question as to the correctness of the judgment was presented by the attack upon the indictment.

The trial court's adoption of an erroneous theory as to the statute which controlled the proceedings affected the substantial rights of the defendants in no respect whatever except that it led to the erroneous sentence. In *Southern Railway Company et al.* v. *Howerton,*

*supra,* the court was confronted with a case which had been tried upon the theory that it was a common-law tort action, and no different attitude was taken until the cause was argued in this court, when appellee, for the first time, conceded that common-law liability was not shown, but contended that the complaint stated a cause of action, and the evidence established a right of recovery, under the Federal Employers' Liability Act. It was argued that the appellee ought not be allowed to change his theory upon appeal. It was held that the parties were bound to know that there could be but one cause of action arising out of the facts. It was concluded that the allegations of the pleading and the evidence made a case upon the only law upon which an action could be predicated; that the substantive facts alleged and proven would have been no different if the case had been tried upon the correct theory; and that the defendant was not injured in his substantial rights. The situation is the same in the case at bar except that the judgment is erroneous. We have concluded that the defendants had a fair trial, free from error except in the judgment. They took no steps below to have the judgment corrected, and, under a long-recognized rule, would have no right to present the error here. But it seems to us that, where this court has adopted a theory of the case inconsistent with the theory of both parties and the theory upon which the case was tried, there is room for an exception to the rule last referred to. To refuse to determine the appeal upon the basis of the theory adopted by the parties, and then affirm a judgment erroneous upon the court's theory, and not objected to below because the court's theory was not anticipated, would be to sacrifice the merits of a cause to mere procedure, as suggested in the Howerton case, *supra.* Such a rule would

impel counsel, out of an excess of caution, to object to and assign error upon any and every ruling of the trial court, which would unjustifiably encumber the records of the trial courts and the records on appeal.

The first count of the indictment stated a good cause of action under the later statute. The facts alleged were specific and would have stated a cause of action under the old statute also if it had not been repealed. The factual situation developed in the testimony was no different than it would have been if the case had been tried upon the correct theory. There was no error in the trial, so that there is no justification or reason for a new trial. The judgment alone is incorrect and erroneous. The defendants' rights will be protected, and the only substantial error will be cured, by correcting the judgment.

The Elkhart Circuit Court is ordered and directed to modify the judgment so as to provide for imprisonment for not less than one nor more than three years, and the judgment thus modified is affirmed.

NOTE.—Reported in 40 N. E. (2d) 108.